532. That as a direct and proximate result of the foregoing, Plaintiff TYSEAN SAIGO sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, headaches, nosebleeds, stomach pain, stomach cramps and stomach aches, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering and denial of proper, timely and/or adequate medical care and treatment.

533. That as a direct and proximate result of the foregoing, Plaintiff TYSEAN SAIGO claims damages herein.

PLAINTIFF ANTHONY MATTHEWS:

534. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff ANTHONY MATTHEWS was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

535. That on March 3, 2015, Plaintiff ANTHONY MATTHEWS, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

536. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff ANTHONY MATTHEWS by the Defendants in their respective cells and, as such, Plaintiff ANTHONY MATTHEWS was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff ANTHONY MATTHEWS on March 3, 2015, to wit: meatloaf, bread, vegetables, corn, cabbage and/or juice.

537. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out,

fed, provided and served by Defendants to Plaintiff ANTHONY MATTHEWS to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff ANTHONY MATTHEWS in said Plaintiff's respective cell.

538.   That on March 3, 2015, Plaintiff ANTHONY MATTHEWS received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served on a cart by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, vegetables corn and/or juice and consumed/ate almost all of same.

539.   That on March 3, 2015 and continuing, Plaintiff ANTHONY MATTHEWS consumed/ate a portion of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff ANTHONY MATTHEWS, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice and, after eating/consuming same, became seriously ill including, but not limited to: dehydration and vomiting.

540.   That on March 3, 2015, and continuing, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff ANTHONY MATTHEWS consuming the foregoing lunch/meal that was contaminated, Plaintiff ANTHONY MATTHEWS became seriously ill and sick and suffered and continued to suffer for days thereafter from ailments/medical conditions including, but not limited to: dehydration and vomiting.

541.   That on March 3, 2015 and at all relevant times herein mentioned, it is Plaintiff ANTHONY MATTHEWS's understanding that Defendant Campbell was the "floor officer"/officer on post for Plaintiffs' housing area/unit in AMKC.

542.   That on March 3, 2015, once Plaintiff ANTHONY MATTHEWS became ill after consuming the contaminated lunch/food, he immediately called for a correction officer on duty/post and informed said officer, name unknown to Plaintiff but known to Defendants, and

advised said officer that he (Plaintiff) consumed the lunch, became ill, vomited and needed to go to the medical clinic.

543. That on or about March 3, 2015 and continuing, when Plaintiff ANTHONY MATTHEWS was finally brought to the medical clinic, he complained to the correction officers, doctors and nurses there, names unknown to Plaintiff but known to Defendants, that he needed medical care, had consumed the lunch that had made him sick, that he vomited and was dehydrated and requested to be provided not only with medical care to treat same but also with a simple glass of water which he was denied/refused.

544. That on or about March 3, 2015 and continuing, when Plaintiff ANTHONY MATTHEWS was brought to the medical clinic, the corrections officers on post/duty at the clinic, names unknown to Plaintiff but known to Defendants, obstructed, hindered, prevented, denied, denied access to and/or otherwise hampered Plaintiff from receiving timely, proper and/or adequate medical care/treatment as they, when Plaintiff did not want to just be placed in a cell and not given medical care and repeatedly requested that he be treated in the clinic, "JOHN DOES" and "JANE DOES", corrections officers on duty/post at the clinic/clinic "pens", ordered him to the "pens" and when he continued to request medical treatment, they hit, struck, assaulted, battered and attacked Plaintiff ANTHONY MATTHEWS with their radios/walkie-talkies causing him injury to his head and face and causing him to bleed from same.

545. That it is Plaintiff ANTHONY MATTHEWS's understanding that other inmates including some of the other Plaintiffs named herein, showed Defendant Campbell, the "floor officer" for Plaintiffs' housing area/unit, the foregoing contaminated lunch/food from their respective trays.

546. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff ANTHONY MATTHEWS

consuming/eating the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff ANTHONY MATTHEWS, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice that was provided and served to Plaintiff ANTHONY MATTHEWS in said Plaintiff's respective cell, Plaintiff ANTHONY MATTHEWS sustained and suffered serious personal and physical injuries including, but not limited to: dehydration, vomiting, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

547.    That on March 3, 2015, and continuing for days thereafter, and at all relevant times herein mentioned, Plaintiff ANTHONY MATTHEWS made repeated requests for medical care and treatment including but not limited to: being placed on sick call, medical testing to determine what was the contaminant n the foregoing lunch/food so as to determine the proper medical care to then be provided, testing of Plaintiff's blood and/or urine to identify what the contaminant was, and/or to be sent to an outside hospital/facility in order for his urine and blood to be tested in order to determine what the contaminant was so as to then receive the proper, timely and necessary medical care/treatment in order to treat same and treatment for the injury he sustained to his head and face after being assaulted/attacked/battered by the aforementioned correction officers with their radios/walkie-talkies but, despite Plaintiffs' requests and despite knowing that Plaintiff ANTHONY MATTHEWS suffered from dehydration and vomiting, the Defendants denied/refused same requests.

548.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff ANTHONY MATTHEWS refused any food for the following several days thereafter and then was forced to

only eat sealed food and/or commissary food as he feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

549. That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff ANTHONY MATTHEWS knew that the kitchen pantry officer for Plaintiff's housing area in AMKC was Defendant Thomas and, on March 3, 2015, because AMKC was placed on lockdown by the Defendants where they could not leave their respective cells, no inmate from Plaintiff's housing area was allowed to assist Defendant Thomas, as would normally be the practice, custom and policy of the Defendants, in the preparing, plating, serving, distributing and/or handing out of the meals to the inmates.

550. That on March 3, 2015, Plaintiff ANTHONY MATTHEWS knew and/or learned that it was Defendant Thomas who wheeled/pushed in the cart of food carrying the trays of the foregoing contaminated food/lunch that was distributed and served to the Plaintiffs herein to consume and eat on same date of March 3, 2015 and that she had inmates from other housing unit/area assist her with same.

551. That prior to March 3, 2015, Plaintiff ANTHONY MATTHEWS knew and/or learned from other inmates that Defendant Thomas does not like their housing area/unit and is always verbally fighting with the inmates including fighting with inmates the morning of March 3, 2015 before she served the foregoing contaminated lunch.

552. That it is Plaintiff ANTHONY MATTHEWS's understanding that the only individual to have access to the foregoing contaminated lunch/meal for cooking, preparation and plating was Defendant Thomas and the inmates that she had assisting her with same on March 3, 2015 who were not form Plaintiffs' housing area/unit.

553.    That it is Plaintiff ANTHONY MATTHEWS's understanding that prior to and or at the time of this March 3, 2015 incident, Defendant Thomas was under investigation because she possessed pictures taken of inmates inside her pantry/kitchen pantry/her office and/or station in the pantry/kitchen pantry and that she was known to ask for sexual favors from some of the inmates in AMKC.

554.    That from March 3, 2015 and continuing, some of the Plaintiffs saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found.

555.    That it is Plaintiff ANTHONY MATTHEWS's understanding that, subsequent to this March 3, 2015 incident, Defendant Feeney came to AMKC and meet with some of the Plaintiffs herein to interview them and that some of the Plaintiffs gave Defendant Feeney samples of the contaminated food/lunch so that the Defendants could test same.

556.    That it is Plaintiff ANTHONY MATTHEWS's understanding that other Plaintiffs provided a sample of their respective food to be tested by an outside independent laboratory and that to date, said samples were in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison. See Exhibit "A", *supra*.

557.    That it is Plaintiff ANTHONY MATTHEWS's understanding that, to date, the sample provided to and possessed by Defendant Feeney has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

558.    That to date, Plaintiff ANTHONY MATTHEWS requests and demands herein that he be sent out to/transported to an outside hospital/medical facility in order to obtain the

proper medical testing, care and treatment for having consumed rat poison on March 3, 2015 that was served to him by Defendants while Plaintiff was in the exclusive custody, care and control of the Defendants.

559. That as Plaintiff ANTHONY MATTHEWS was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

560. That as a direct and proximate result of the foregoing, Plaintiff ANTHONY MATTHEWS sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, dehydration, vomiting, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering and denial of proper, timely and/or adequate medical care and treatment.

561. That as a direct and proximate result of the foregoing, Plaintiff ANTHONY MATTHEWS claims damages herein.

PLAINTIFF REGINALD DUPREE:

562. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff REGINALD DUPREE was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

563. That on March 3, 2015, Plaintiff REGINALD DUPREE, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

564. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff REGINALD DUPREE, by the Defendants in their respective cells and, as such, Plaintiff REGINALD DUPREE was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff REGINALD DUPREE on March 3, 2015, to wit: meatloaf, bread, vegetables, corn, cabbage and/or juice.

565. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff REGINALD DUPREE, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff REGINALD DUPREE in said Plaintiff's respective cell.

566. That on March 3, 2015, Plaintiff REGINALD DUPREE received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice and consumed/ate a portion of same.

567. That on March 3, 2015 and continuing, after Plaintiff REGINALD DUPREE consumed/ate a portion of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff REGINALD DUPREE, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice, Plaintiff REGINALD DUPREE became ill/sick and, when he looked at the remnants of the foregoing lunch in the tray he was served/provided by Defendants, he saw green/blue/bluish-green pellets in the meatloaf and mixed in amongst the corn/vegetables/cabbage, with a large whole pellet in the corn, and immediately called for Defendant Campbell, the Correction Officer assigned to/on duty for the Plaintiffs' housing area in AMKC when the foregoing lunch was served and the Correction

Officer who assisted in serving the Plaintiffs, including Plaintiff REGINALD DUPREE with the March 3, 2015 lunch trays consisting of the foregoing meatloaf, bread, corn, vegetables, cabbage and/or juice.

568. That on March 3, 2015, Plaintiff REGINALD DUPREE, as well as other Plaintiffs herein, showed Defendant Campbell the foregoing lunch/food/meal consisting of meatloaf, corn, vegetables, cabbage and/or juice and Defendant Campbell stated to Plaintiff REGINALD DUPREE and to other Plaintiffs herein after viewing same that same food was contaminated and had "stuff" in the food.

569. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff REGINALD DUPREE consuming/eating the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff REGINALD DUPREE, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff REGINALD DUPREE in said Plaintiff's respective cell, Plaintiff REGINALD DUPREE sustained and suffered serious personal and physical injuries including, but not limited to: headaches, stomach pains, vomiting, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

570. That on March 3, 2015, and continuing and at all relevant times herein mentioned, Plaintiff REGINALD DUPREE, as well as other Plaintiffs including Plaintiff TROY SIDDONS, also showed the foregoing lunch meal/food to Defendant Johnson who also agreed, after viewing same, that something was wrong in/with the food.

571. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff REGINALD DUPREE, after eating/consuming the foregoing contaminated lunch meal/food and after becoming seriously ill from same, including but not limited to headaches,

stomach pains and vomiting, repeatedly requested of Defendants Campbell and Johnson to go to "medical"/"sick call" so that he could be examined, tested, and treated for whatever this contaminant in the foregoing lunch meal/food was and in order to determine what the contaminant was so as to receive the proper, timely and required medical care/treatment for same.

572.    That on March 3, 2015, and continuing, and at all relevant times herein mentioned, after Plaintiff REGINALD DUPREE's repeated demand to go to "medical"/"sick call", Plaintiff REGINALD DUPREE was eventually brought to Defendant, the AMKC Medical Clinic/Facility where Plaintiff REGINALD DUPREE vomited again in the clinic two times and, yet, despite knowing and seeing the foregoing, the doctors, nurses, medical staff and medical personnel at the clinic merely checked Plaintiff's heart and sent him back to his cell.

573.    That on March 3, 2015, while Plaintiff REGINALD DUPREE was at the medical clinic, a Haitian doctor, name unknown to Plaintiff but known to Defendants, a "Ms. Stevens", a doctor "Goldberry" (full name known to Defendants but unknown to Plaintiff) and a Chinese doctor, believed to be Defendant Park, all viewed Plaintiff's contaminated lunch as he brought same with him to the medical clinic and all of the foregoing individuals stated to Plaintiff, in sum and substance, that the contaminant looked like rat poison and, yet despite the foregoing representation, and despite seeing Plaintiff vomit two times while at the medical clinic, and in particular "Goldberry" having seen same, they merely checked his heart and sent Plaintiff REGINALD DUPREE back to his cell.

574.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, while at the medical clinic, Plaintiff REGINALD DUPREE repeatedly requested of the doctors, nurses, the Haitian doctor, "Ms. Stevens", "Goldberry", Defendant Park and the correction officers at the clinic that he not be sent back to his cell, that he be treated at the AMKC Medical

Clinic/Facility, that his urine and blood be tested and/or that he be sent to an outside hospital/facility in order for his urine and blood to be tested in order to determine what the contaminant was so as to then receive the proper, timely and necessary medical care/treatment in order to treat same but, despite Plaintiff having consumed rat poison, despite his suffering from repeated vomiting, headaches and stomach pains and despite his repeated requests for medical care and testing, the Defendants and their agents, servants, employees, doctors, nurses, medical staff, "Ms. Stevens", "Goldberry", Defendant Park, the Haitian doctor and the correction officers at the clinic denied/refused him same.

575.    That as Plaintiff REGINALD DUPREE was continuing to feel sick and ill, including, but not limited to suffering from headaches, stomach pains and vomiting for several days after the March 3, 2015 consumption of the rat poison, and as it was still not yet determined, discovered or even tested by Defendants as to the identity of the contaminant that was causing him to be sick and ill, Plaintiff REGINALD DUPREE, from March 3, 2015 and continuing for over a week thereafter, repeatedly demanded to be placed on/requested/logged in for "sick call" and/or to go to the medical clinic  so that he could be medically treated but the Defendants, including but not limited to Defendant Bowen, repeatedly denied same despite Plaintiffs' serious medical conditions/ailments of which the Defendants were aware.

576.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff REGINALD DUPREE was forced to only eat sealed food and/or food from commissary as he feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

577.    That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff REGINALD DUPREE knew that the kitchen pantry officer for Plaintiff's housing area in AMKC, to wit: 12 upper, was Defendant Thomas and, on March 3, 2015, because AMKC was placed on lockdown by the Defendants where they could not leave their respective cells, no inmate from Plaintiff's housing area of 12 upper was allowed to assist Defendant Thomas, as would normally be the practice, custom and policy of the Defendants, in the preparing, plating, serving, distributing and/or handing out of the meals to the inmates from 12 upper. Rather, on March 3, 2015, for the foregoing lunch meal/food that was served to Plaintiffs on same date, Defendant Thomas had two Spanish inmates, believed to be inmates housed in 11 upper-another housing area/unit of AMKC- to assist her with the preparation, cooking, plating and distribution of the food/meals/lunch on March 3, 2015 that was served, handed out, cooked, prepared, plated and handed out to Plaintiffs to eat on same March 3, 2015.

578.    That on March 3, 2015, prior to the Plaintiffs being served the foregoing contaminated food/lunch/meal on same date, Defendant Thomas engaged in a verbal fight with other inmates from Plaintiffs' housing area, none of those involved in same were any of the Plaintiffs herein, and, right as dinner was being served by Defendant Thomas on same date of March 3, 2015, Defendant Thomas stated to the Plaintiffs and the other inmates of 12 upper, with a sense of self satisfaction, in sum and substance, that they are mad because they got sick from the foregoing contaminated lunch of same date. That Defendant Thomas had been engaging in verbal fights with inmates from Plaintiffs' housing area/unit for months prior to this March 3, 2015 incident.

579.    That it is Plaintiff REGINALD DUPREE's understanding that the only individuals to have access to the foregoing contaminated lunch/meal for cooking, preparation

and plating was Defendant Thomas and the two Spanish inmates she picked to assist her with same.

580.    That it is Plaintiff REGINALD DUPREE's understanding that prior to and or at the time of this March 3, 2015 incident, Defendant Thomas was under investigation because she possessed pictures taken of inmates inside her pantry/kitchen pantry/her office and/or station in the pantry/kitchen pantry.

581.    That, upon information and belief, approximately four to five days after this March 3, 2015 incident, Defendant Feeney came to AMKC and met with some of the Plaintiffs, including Plaintiff REGINALD DUPREE who gave her a sample of the contaminated food so that the Defendants could test same.

582.    That from March 3, 2015 and continuing, some of the other Plaintiffs including Plaintiff TROY SIDDONS saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found.

583.    That on March 14, 2015, after Defendant Feeney had confirmed with the Court that she had received a sample of the foregoing contaminated food and that she observed same to contain blue-green pellets and that same sample would be tested by the Defendants, Plaintiff REGINALD DUPREE gave the remaining sample of his contaminated food/lunch that was served to him and that he consumed on March 3, 2015 to be tested by an independent outside laboratory.

584.    That to date, Plaintiff REGINALD DUPREE is aware that this foregoing sample of his contaminated food was, in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison. See Exhibit "A", *supra.*

585. That to date, it is Plaintiff REGINALD DUPREE's understanding that the sample provided to and possessed by Defendant Feeney, including the sample provided to her by Plaintiff REGINAL DUPREE has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

586. That it is Plaintiff REGINALD DUPREE's understanding that on or about March 13, 2015, Department of Corrections investigators came to AMKC and took possession of the kitchen/kitchen pantry/pantry's ledgers, books, log books, inventory books, staff books and/or sign-in sheets/books.

587. That to date, Plaintiff REGINALD DUPREE requests and demands herein that he be sent out to/transported to an outside hospital/medical facility in order to obtain the proper medical testing, care and treatment for having consumed rat poison on March 3, 2015 that was served to him by Defendants while Plaintiff was in the exclusive custody, care and control of the Defendants.

588. That as Plaintiff REGINALD DUPREE was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

589. That as a direct and proximate result of the foregoing, Plaintiff REGINALD DUPREE sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, vomiting, headaches, stomach pain, mental anguish, shock, fear, emotional distress (intentional and negligent),

psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering and denial of proper, timely and/or adequate medical care and treatment.

590.    That as a direct and proximate result of the foregoing, Plaintiff REGINALD DUPREE claims damages herein.

PLAINITFF MICHAEL WILLIAMS:

591.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff MICHAEL WILLIAMS was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

592.    That on March 3, 2015, Plaintiff MICHAEL WILLIAMS, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

593.    That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff MICHAEL WILLIAMS, by the Defendants in their respective cells and, as such, Plaintiff MICHAEL WILLIAMS was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff MICHAEL WILLIAMS on March 3, 2015, to wit: meatloaf, bread, vegetables, corn, cabbage and/or juice.

594.    That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff MICHAEL WILLIAMS, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff MICHAEL WILLIAMS in said Plaintiff's respective cell.

595. That on March 3, 2015, Plaintiff MICHAEL WILLIAMS received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice and consumed/ate almost all of same.

596. That on March 3, 2015 and continuing, after Plaintiff MICHAEL WILLIAMS consumed/ate almost all of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff MICHAEL WILLIAMS, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice, Plaintiff MICHAEL WILLIAMS became ill/sick and, when he looked at the remnants of the foregoing lunch in the tray he was served/provided by Defendants, he saw blue green specks in the food and, in particular in the corn, and immediately called for Defendant Campbell, the Correction Officer assigned to/on duty for the Plaintiffs' housing area in AMKC when the foregoing lunch was served on March 3, 2015 as well as for Defendant Bowen and told them that he was sick after eating the foregoing contaminated lunch/food.

597. That on March 3, 2015, Plaintiff MICHAEL WILLIAMS heard other inmates calling for Defendant Campbell as he heard such other inmates becoming sick after eating the foregoing lunch, including Plaintiff BERNABE LOPEZ who became sick and was vomiting and was calling out that he was sick and that there was something in the lunch/food, and Plaintiff MICHAEL WILLIAMS heard Defendant Campbell state to one such sick inmate that, after being showed the food/lunch, he (Defendant Campbell) himself sees blue-green "stuff" in said food/lunch.

598. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff MICHAEL WILLIAMS consuming/eating the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed,

provided and served by Defendants to Plaintiff MICHAEL WILLIAMS, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff MICHAEL WILLIAMS in said Plaintiff's respective cell, Plaintiff MICHAEL WILLIAMS sustained and suffered serious personal and physical injuries including, but not limited to: nausea, vomiting, dizziness, lightheadedness, stomach cramps, stomach pains, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

560.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff MICHAEL WILLIAMS, after eating/consuming the foregoing contaminated lunch meal/food and after becoming seriously ill from same, including but not limited to nausea, vomiting, dizziness, lightheadedness, stomach cramps, stomach pains,, repeatedly requested of Defendants Campbell and Bowen to go to "medical"/"sick call" so that he could be examined, tested, and treated for whatever this contaminant in the foregoing lunch meal/food was and in order to determine what the contaminant was so as to receive the proper, timely and required medical care/treatment for same but was denied/refused same by Defendants, including by Defendants Campbell and Bowen, and was not provided with any medical care or treatment on March 3, 2015.

561.    That on or about March 5, 2015, approximately two days after Plaintiff MICHAEL WILLIAMS consumed/ate the contaminated food and became ill including, but not limited to: nausea, vomiting, dizziness, lightheadedness, stomach cramps, stomach pains, and still suffering from the foregoing ailments/medical conditions, Defendants finally allowed Plaintiff MICHAEL WILLIAMS to go to/have "sick call" where he was merely given a white liquid to drink by a doctor and/or nurse, name and position known to Defendants but not known to Plaintiff, and was sent back to his cell.

562.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff MICHAEL WILLIAMS repeatedly requested of the doctors, nurses, medical staff, medical personnel, and the correction officers that he not be sent back to his cell, that he be treated at the AMKC Medical Clinic/Facility, that his urine and blood be tested and/or that he be sent to an outside hospital/facility in order for his urine and blood to be tested in order to determine what the contaminant was so as to then receive the proper, timely and necessary medical care/treatment in order to treat same but, despite Plaintiff having consumed rat poison, despite his suffering from nausea, vomiting, dizziness, lightheadedness, stomach cramps, stomach pains, and despite his repeated requests for medical care and testing, the Defendants and their agents, servants, employees, doctors, nurses, medical staff and correction officers denied/refused him same.

563.    That as Plaintiff MICHAEL WILLIAMS was continuing to feel sick and ill, including, but not limited to suffering from nausea, vomiting, dizziness, lightheadedness, stomach cramps, stomach pains for days after the March 3, 2015 consumption of the rat poison, and as it was still not yet determined, discovered or even tested by Defendants as to the identity of the contaminant that was causing him to be sick and ill, Plaintiff MICHAEL WILLIAMS, from March 3, 2015 and continuing for days thereafter, repeatedly demanded to be placed on/requested/logged in for "sick call" and/or to go to the medical clinic so that he could be medically treated but the Defendants, including but not limited to Defendants Campbell and Bowen, repeatedly denied same despite Plaintiffs' serious medical conditions/ailments of which the Defendants were aware.

564.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff MICHAEL

WILLIAMS was forced to refuse meals and then to only eat food from the commissary and requested only pre-sealed/pre-packaged food, as he feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

565.    That as a direct and proximate result of being served food contaminated with rat poison, becoming seriously ill therefrom including, but not limited to: nausea, vomiting, dizziness, lightheadedness, stomach cramps, stomach pains and being denied timely, proper and/or adequate medical care/treatment for same despite his need for and requests for same, Plaintiff MICHAEL WILLIAMS filed a medical grievance with/against the Department of Corrections.

566.    That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff MICHAEL WILLIAMS knew that the kitchen pantry officer for Plaintiff's housing area in AMKC, to wit: 12 upper, was Defendant Thomas and, on March 3, 2015, because AMKC was placed on lockdown by the Defendants where they could not leave their respective cells, no inmate from Plaintiff's housing area of 12 upper was allowed to assist Defendant Thomas, as would normally be the practice, custom and policy of the Defendants, in the preparing, plating, serving, distributing and/or handing out of the meals to the inmates from 12 upper. Rather, it is Plaintiff MICHAEL WILLIAMS's understanding that on March 3, 2015, for the foregoing lunch meal/food that was served to Plaintiffs on same date, Defendant Thomas had two other inmates to assist her with the preparation, cooking, plating and distribution of the food/meals/lunch on March 3, 2015 that was served, handed out, cooked, prepared, plated and handed out to Plaintiffs to eat on same March 3, 2015.

567.    That on March 3, 2015, prior to the Plaintiffs being served the foregoing contaminated food/lunch/meal on same date, Defendant Thomas engaged in a verbal fight with

other inmates from Plaintiffs' housing area, none of those involved in same were any of the Plaintiffs herein, and, right as dinner was being served by Defendant Thomas on same date of March 3, 2015, Defendant Thomas stated to the Plaintiffs and the other inmates of 12 upper, with a sense of self satisfaction, in sum and substance, that they are mad because they got sick from the foregoing contaminated lunch of same date. It is Plaintiff MICHAEL WILLIAMS's understanding that Defendant Thomas had been engaging in verbal fights with inmates from Plaintiffs' housing area/unit for months prior to this March 3, 2015 incident.

568.    That it is Plaintiff MICHAEL WILLIAMS's understanding that the only individuals to have access to the foregoing contaminated lunch/meal for cooking, preparation and plating was Defendant Thomas and the two other inmates she picked to assist her with same.

569.    That, it is Plaintiff MICHAEL WILLIAMS's understanding that approximately four to five days after this March 3, 2015 incident, Defendant Feeney came to AMKC and met with some of the Plaintiffs who gave her a sample of the contaminated food so that the Defendants could test same.

570.    That it is Plaintiff MICHAEL WILLIAMS's understanding that from March 3, 2015 and continuing, some of the other Plaintiffs saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found.

571.    That it is Plaintiff MICHAEL WILLIAMS's understanding that the sample of the contaminated food that was saved by some of the Plaintiffs herein was given to be tested by an independent outside laboratory and that, to date, this foregoing sample of contaminated food

was, in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison. See Exhibit "A", *supra*.

572.    That to date, it is Plaintiff MICHAEL WILLIAMS's understanding that the sample provided to and possessed by Defendant Feeney has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

573.    That to date, Plaintiff MICHAEL WILLIAMS requests and demands herein that he be sent out to/transported to an outside hospital/medical facility in order to obtain the proper medical testing, care and treatment for having consumed rat poison on March 3, 2015 that was served to him by Defendants while Plaintiff was in the exclusive custody, care and control of the Defendants.

574.    That as Plaintiff MICHAEL WILLIAMS was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

575.    That as a direct and proximate result of the foregoing, Plaintiff MICHAEL WILLIAMS sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, nausea, vomiting, dizziness, lightheadedness, stomach cramps, stomach pains, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering and denial of proper, timely and/or adequate medical care and treatment.

576.    That as a direct and proximate result of the foregoing, Plaintiff MICHAEL WILLIAMS claims damages herein.

PLAINTIFF ADHM HAMMOURI:

577.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff ADHM HAMMOURI was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

578.    That on March 3, 2015, Plaintiff ADHM HAMMOURI, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

579.    That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff ADHM HAMMOURI, by the Defendants in their respective cells and, as such, Plaintiff ADHM HAMMOURI was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff ADHM HAMMOURI on March 3, 2015, to wit: meatloaf, bread, vegetables, corn, cabbage and/or juice.

580.    That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff ADHM HAMMOURI, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff ADHM HAMMOURI in said Plaintiff's respective cell.

581.    That on March 3, 2015, Plaintiff ADHM HAMMOURI received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and

served by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice and consumed/ate almost all of same.

582.    That on March 3, 2015 and continuing, as Plaintiff ADHM HAMMOURI consumed/ate all of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff ADHM HAMMOURI, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice, Plaintiff ADHM HAMMOURI noticed greenish pellets in same and became ill/sick after consuming same including, but not limited to: vomiting, vomiting blood, diarrhea, headaches, body shakes and stomach pain.

583.    That on March 3, 2015, within approximately thirty minutes after the foregoing lunch was served, Plaintiff ADHM HAMMOURI also noticed other inmates including some of the other Plaintiffs herein, becoming sick from the foregoing contaminated lunch and noticed them vomiting.

584.    That on March 3, 2015 and continuing, Plaintiff ADHM HAMMOURI immediately and repeatedly requested from the correction officer(s) on post/on duty at Plaintiff's housing area/unit, to go to the medical clinic and/or be placed on "sick call" as he consumed the contaminated food/lunch and was suffering from vomiting, vomiting blood, body shakes, diarrhea, headaches and stomach pain therefrom but, despite his requests, and despite his serious medical conditions, Plaintiff was refused/denied medical care/treatment on March 3, 2015 including the denial of the simple request for toilet paper.

585.    That on March 3, 2015 and continuing thereafter, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff ADHM HAMMOURI consuming/eating the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff ADHM HAMMOURI, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff ADHM

HAMMOURI in said Plaintiff's respective cell, Plaintiff ADHM HAMMOURI sustained and suffered serious personal and physical injuries including, but not limited to: vomiting, vomiting blood, diarrhea, headaches, stomach pain, body shakes, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

586. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff ADHM HAMMOURI, after eating/consuming the foregoing contaminated lunch meal/food and after becoming seriously ill from same, including but not limited to vomiting, vomiting blood, diarrhea, body shakes, headaches and stomach pain, repeatedly requested to go to "medical"/"sick call" so that he could be examined, tested, and treated for whatever this contaminant in the foregoing lunch meal/food was and in order to determine what the contaminant was so as to receive the proper, timely and required medical care/treatment for same but was denied/refused same by Defendants for days and was not provided with any medical care or treatment on March 3, 2015.

587. That approximately two to three days after Plaintiff ADHM HAMMOURI consumed the contaminated lunch and became ill including, but not limited to: vomiting, vomiting blood, diarrhea, body shakes, headaches and stomach pain, Defendants finally allowed Plaintiff to go to the medical clinic where they merely checked his blood pressure, gave him Maylox and sent him back to his cell.

588. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff ADHM HAMMOURI repeatedly requested of the doctors, nurses, medical staff, medical personnel, and the correction officers that he not be sent back to his cell, that he be treated at the AMKC Medical Clinic/Facility, that his urine and blood be tested and/or that he be sent to an outside hospital/facility in order for his urine and blood to be tested in order to

determine what the contaminant was so as to then receive the proper, timely and necessary medical care/treatment in order to treat same but, despite Plaintiff having consumed rat poison, despite his suffering from vomiting, vomiting blood, diarrhea, body shakes, headaches and stomach pain, and despite his repeated requests for medical care and testing, the Defendants and their agents, servants, employees, doctors, nurses, medical staff and correction officers denied/refused him same.

589.    That as Plaintiff ADHM HAMMOURI was continuing to feel sick and ill, including, but not limited to suffering from vomiting, vomiting blood, diarrhea, body shakes, headaches and stomach pain for days after the March 3, 2015 consumption of the rat poison, and as it was still not yet determined, discovered or even tested by Defendants as to the identity of the contaminant that was causing him to be sick and ill, Plaintiff ADHM HAMMOURI, from March 3, 2015 and continuing for days thereafter, repeatedly demanded to be placed on/requested/logged in for "sick call" and/or to go to the medical clinic so that he could be medically treated but the Defendants repeatedly denied same despite Plaintiffs' serious medical conditions/ailments of which the Defendants were aware.

590.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff ADHM HAMMOURI was forced to refuse meals and/or to request only commissary or pre-packaged/pre-sealed food as he does not trust the food/meals prepared by the Defendants and feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

591.    That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff ADHM HAMMOURI knew that the kitchen pantry officer for Plaintiff's housing area in

AMKC, to wit: 12 upper, was Defendant Thomas and, on March 3, 2015, because AMKC was

placed on lockdown by the Defendants where they could not leave their respective cells, no

inmate from Plaintiff's housing area of 12 upper was allowed to assist Defendant Thomas, as

would normally be the practice, custom and policy of the Defendants, in the preparing, plating,

serving, distributing and/or handing out of the meals to the inmates from 12 upper. Rather, it is

Plaintiff ADHM HAMMOURI's understanding that on March 3, 2015, for the foregoing lunch

meal/food that was served to Plaintiffs on same date, Defendant Thomas had two other inmates

to assist her with the preparation, cooking, plating and distribution of the food/meals/lunch on

March 3, 2015 that was served, handed out, cooked, prepared, plated, served and handed out to

Plaintiffs to eat on same March 3, 2015 by Defendants including by Defendant Thomas.

592.    That on March 3, 2015, prior to the Plaintiffs being served the foregoing

contaminated food/lunch/meal on same date, Defendant Thomas engaged in a verbal fight with

other inmates from Plaintiffs' housing area, as she has done for months prior to the within

incident, none of those involved in same were any of the Plaintiffs herein, and Defendant

Thomas was laughing a "sinister" laugh as she brought and served the March 3, 2015 foregoing

lunch to the Plaintiffs.

593.    That on or about March 4, 2015, the day after Plaintiffs including Plaintiff

ADHM HAMMOURI ate/consumed the contaminated lunch and became ill, Plaintiff ADHM

HAMMOURI, whose cell is right next to the kitchen/pantry and to Defendant Thomas, heard

Defendant Thomas tell Plaintiffs and the entire housing area/unit that they (the Plaintiffs and

entire housing area/unit) deserved "it" (meaning being served the contaminated food and

becoming sick therefrom), in sum and substance stating to them: "You mother f...ers deserve

this".

594.   That it is Plaintiff ADHM HAMMOURI's understanding that the only individuals to have access to the foregoing contaminated lunch/meal for cooking, preparation and plating was Defendant Thomas and the two other inmates she picked to assist her with same.

595.   That, it is Plaintiff ADHM HAMMOURI's understanding that approximately four to five days after this March 3, 2015 incident, Defendant Feeney came to AMKC and met with some of the Plaintiffs who gave her a sample of the contaminated food so that the Defendants could test same. That Plaintiff's remnants of food was confiscated by a correction officer and, as such, could not be saved by Plaintiff

596.   That it is Plaintiff ADHM HAMMOURI's understanding that from March 3, 2015 and continuing, some of the other Plaintiffs saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found.

597.   That it is Plaintiff ADHM HAMMOURI's understanding that the sample of the contaminated food that was saved by some of the Plaintiffs herein was given to be tested by an independent outside laboratory and that, to date, this foregoing sample of contaminated food was, in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison. See Exhibit "A", *supra.*

598.   That to date, it is Plaintiff ADHM HAMMOURI's understanding that the sample provided to and possessed by Defendant Feeney has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

599.    That to date, Plaintiff ADHM HAMMOURI requests and demands herein that he be sent out to/transported to an outside hospital/medical facility in order to obtain the proper medical testing, care and treatment for having consumed rat poison on March 3, 2015 that was served to him by Defendants while Plaintiff was in the exclusive custody, care and control of the Defendants.

600.    That as Plaintiff ADHM HAMMOURI was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

601.    That as a direct and proximate result of the foregoing, Plaintiff ADHM HAMMOURI sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, vomiting, vomiting blood, diarrhea, body shakes, headaches, stomach pain, loss of weight, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering and denial of proper, timely and/or adequate medical care and treatment.

602.    That as a direct and proximate result of the foregoing, Plaintiff ADHM HAMMOURI claims damages herein.

PLAINTIFF DESHAUN GREGORY:

603.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff DESHAUN GREGORY was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

604.    That on March 3, 2015, Plaintiff DESHAUN GREGORY, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

605.    That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff DESHAUN GREGORY, by the Defendants in their respective cells and, as such, Plaintiff DESHAUN GREGORY was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff DESHAUN GREGORY on March 3, 2015, to wit: meatloaf, bread, vegetables, corn, cabbage and/or juice.

606.    That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff DESHAUN GREGORY, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff DESHAUN GREGORY in said Plaintiff's respective cell.

607.    That on March 3, 2015, Plaintiff DESHAUN GREGORY received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice and consumed/ate almost all of same.

608.    That on March 3, 2015 and continuing, after Plaintiff DESHAUN GREGORY consumed/ate all of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff DESHAUN GREGORY, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice, Plaintiff DESHAUN GREGORY looked at the remnants of same food left on his tray and saw green blue "specks" in same and,

within approximately thirty minutes after consuming same, Plaintiff became ill including, but not limited to: nausea, stomach pain, vomiting, vomiting blood and diarrhea.

609.    That on March 3, 2015, after Plaintiff DESHAUN GREGORY consumed the foregoing contaminated food and became ill including, but not limited to: nausea, stomach pain, vomiting, vomiting blood and diarrhea, he immediately called Defendant Campbell and told Defendant Campbell that he ate the lunch and became sick, including vomiting therefrom, and needed to go to "medical"/"sick call" but was not brought to the medical clinic until hours after he consumed said lunch and became seriously ill.

610.    That on March 3, 2015 when Plaintiff DESHAUN GREGORY was finally brought by Defendants to the medical clinic hours later, Plaintiff was treated by a Spanish, older, short female with reddish-brown hair color (name and position unknown to Plaintiff but known to the Defendants), where Plaintiff showed her the remnants of food left form his tray and where she told Plaintiff DESHAUN GREGORY  that the contaminant looked like rat poison, took his vitals, gave him a thick white liquid to drink for his stomach and sent him back to his cell.

611. That on March 3, 2015 and continuing for several days thereafter, Plaintiff DESHAUN GREGORY immediately and repeatedly requested from the correction officer(s) on post/on duty at Plaintiff's housing area/unit, to go to the medical clinic and/or be placed on "sick call" as he consumed the contaminated food/lunch and was suffering from nausea, stomach pain, vomiting, vomiting blood and diarrhea but Defendant refused/denied him same until a couple of days after his initial visit on March 3, 2015 during which he told the doctor/nurse on duty (name and position unknown to Plaintiff but known to Defendants) that he was still sick, that the white liquid did not help and that he still needed medical care/treatment/attention but was denied further medical care and sent back to his cell.

612.    That on March 3, 2015 and continuing thereafter, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff DESHAUN GREGORY consuming/eating the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff DESHAUN GREGORY, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff DESHAUN GREGORY in said Plaintiff's respective cell, Plaintiff DESHAUN GREGORY sustained and suffered serious personal and physical injuries including, but not limited to: nausea, stomach pain, vomiting, vomiting blood, diarrhea, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

613.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff DESHAUN GREGORY, after eating/consuming the foregoing contaminated lunch meal/food and after becoming seriously ill from same, including but not limited to nausea, stomach pain, vomiting, vomiting blood and diarrhea, repeatedly requested to go to "medical"/"sick call" so that he could be examined, tested, and treated for whatever this contaminant in the foregoing lunch meal/food was and in order to determine what the contaminant was so as to receive the proper, timely and required medical care/treatment for same but was denied/refused same by Defendants for days and was not provided any further "sick call" until the aforementioned visit a couple of days after the March 3, 2015 incident and on or about March 17, 2015 when Plaintiff, still suffering from ailments including but not limited to stomach pains, was brought to "sick call" where finally, after Plaintiff had been requesting same since March 3, 2015, a female nurse/doctor/medical staff/medical personnel (name and position unknown to Plaintiff but known to the Defendants) took/drew his blood for testing  That to date, Plaintiff DESHAUN GREGORY is not aware of the foregoing blood test results.

614.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff DESHAUN GREGORY repeatedly requested of the doctors, nurses, medical staff, medical personnel, and the correction officers that he not be sent back to his cell, that he be treated at the AMKC Medical Clinic/Facility, that his urine and blood be tested and/or that he be sent to an outside hospital/facility in order for his urine and blood to be tested in order to determine what the contaminant was so as to then receive the proper, timely and necessary medical care/treatment in order to treat same but, despite Plaintiff having consumed rat poison, despite his suffering from nausea, stomach pain, vomiting, vomiting blood and diarrhea but, despite his repeated requests for medical care and testing, the Defendants and their agents, servants,     employees,     doctors,     nurses,     medical     staff     and     correction     officers denied/refused/delayed him same as set forth above.

615.    That as Plaintiff DESHAUN GREGORY was continuing to feel sick and ill, including, but not limited to suffering from vomiting, vomiting blood, diarrhea, body shakes, headaches and stomach pain for days after the March 3, 2015 consumption of the rat poison, and as it was still not yet determined, discovered or even tested by Defendants as to the identity of the contaminant that was causing him to be sick and ill, Plaintiff DESHAUN GREGORY, from March 3, 2015 and continuing for days thereafter, repeatedly demanded to be placed on/requested/logged in for "sick call" and/or to go to the medical clinic so that he could be medically treated but the Defendants repeatedly denied/refused/delayed same as set forth above despite Plaintiffs' serious medical conditions/ailments of which the Defendants were aware.

616.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff DESHAUN GREGORY was forced to refuse meals and then to request only sealed/Kosher meals and/or food

from commissary as he does not trust the food/meals prepared by the Defendants and feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

617.    That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff DESHAUN GREGORY knew that the kitchen pantry officer for Plaintiff's housing area in AMKC, to wit: 12 upper, was Defendant Thomas and, on March 3, 2015, because AMKC was placed on lockdown by the Defendants where they could not leave their respective cells, no inmate from Plaintiff's housing area of 12 upper was allowed to assist Defendant Thomas, as would normally be the practice, custom and policy of the Defendants, in the preparing, plating, serving, distributing and/or handing out of the meals to the inmates from 12 upper. Rather, it is Plaintiff DESHAUN GREGORY's understanding that on March 3, 2015, for the foregoing lunch meal/food that was served to Plaintiffs on same date, Defendant Thomas had two other inmates to assist her with the preparation, cooking, plating and distribution of the food/meals/lunch on March 3, 2015 that was served, handed out, cooked, prepared, plated, served and handed out to Plaintiffs to eat on same March 3, 2015 by Defendants including by Defendant Thomas who, herself, wheeled in the cart containing the lunch trays into the Plaintiffs' housing area/unit.

618.    That on March 3, 2015, prior to the Plaintiffs being served the foregoing contaminated food/lunch/meal on same date, Defendant Thomas engaged in a verbal fight with other inmates from Plaintiffs' housing area, as she has done for months prior to the within incident, none of those involved in same were any of the Plaintiffs herein, and, after the foregoing contaminated lunch was served to and consumed by Plaintiffs, Defendant Thomas came back laughing and told the housing unit/area, including to Plaintiffs, in sum and substance, that they (meaning Plaintiffs and the housing unit/area) are "just mad".

619.    That it is Plaintiff DESHAUN GREGORY's understanding that the only individuals to have access to the foregoing contaminated lunch/meal for cooking, preparation and plating was Defendant Thomas and the two other inmates she picked to assist her with same.

620.    That, it is Plaintiff DESHAUN GREGORY's understanding that approximately four to five days after this March 3, 2015 incident, Defendant Feeney came to AMKC and met with some of the Plaintiffs who gave her a sample of the contaminated food so that the Defendants could test same.   That Plaintiff's remnants of food was confiscated by a correction officer and, as such, could not be saved by Plaintiff

621.    That it is Plaintiff DESHAUN GREGORY's understanding that from March 3, 2015 and continuing, some of the other Plaintiffs saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found.

622.    That it is Plaintiff DESHAUN GREGORY's understanding that the sample of the contaminated food that was saved by some of the Plaintiffs herein was given to be tested by an independent outside laboratory and that, to date, this foregoing sample of contaminated food was, in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison.   See Exhibit "A", *supra.*

623.    That to date, it is Plaintiff DESHAUN GREGORY's understanding that the sample provided to and possessed by Defendant Feeney has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

624.    That to date, Plaintiff DESHAUN GREGORY requests and demands herein that he be sent out to/transported to an outside hospital/medical facility in order to obtain the proper medical testing, care and treatment for having consumed rat poison on March 3, 2015 that was served to him by Defendants while Plaintiff was in the exclusive custody, care and control of the Defendants.

625.    That as Plaintiff DESHAUN GREGORY was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

626.    That as a direct and proximate result of the foregoing, Plaintiff DESHAUN GREGORY sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, nausea, stomach pain, vomiting, vomiting blood, diarrhea, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering and denial of proper, timely and/or adequate medical care and treatment.

627.    That as a direct and proximate result of the foregoing, Plaintiff DESHAUN GREGORY claims damages herein.

PLAINTIFF ANDRE POUNALL:

628.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff ANDRE POUNALL was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

629. That on March 3, 2015, Plaintiff ANDRE POUNALL, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

630. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff ANDRE POUNALL, by the Defendants in their respective cells and, as such, Plaintiff ANDRE POUNALL was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff ANDRE POUNALL on March 3, 2015, to wit: meatloaf, bread, vegetables, corn, cabbage and/or juice.

631. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff ANDRE POUNALL, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff ANDRE POUNALL in said Plaintiff's respective cell.

632. That on March 3, 2015, Plaintiff ANDRE POUNALL received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice and consumed/ate approximately a quarter to half of same.

633. That on March 3, 2015 and continuing, after Plaintiff ANDRE POUNALL consumed/ate a quarter to half of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff ANDRE POUNALL, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice, Plaintiff ANDRE POUNALL became ill/sick and, when he looked at the remnants of the foregoing lunch in the tray he was served/provided by Defendants, he saw greenish-bluish substance in same and, in

particular, in the corn, cabbage and meatloaf and immediately called for Defendant Campbell, the Correction Officer assigned to/on duty for the Plaintiffs' housing area in AMKC when the foregoing lunch was served and told Defendant Campbell that he ate the foregoing lunch and now had pains in his throat and chest and was vomiting from same and requested to go to "medical"/"sick call".

634.    That on March 3, 2015, after Plaintiff ANDRE POUNALL ate/consumed the foregoing contaminated lunch and was having chest and throat pain and was vomiting, and after he notified Defendant Campbell of the foregoing and requested medical attention, Defendant Johnson came to Plaintiff's housing area/unit where Plaintiff told Defendant Johnson that he needed "sick call" because Plaintiff had throat and chest pain and was vomiting and, as a result of same, Defendant Johnson took Plaintiff ANDRE POUNALL, along with Plaintiffs SIDDONS, DUPREE, MATTHEWS, WILSON AND DURRELL WILLIAMS, to the medical clinic.

635.    That on March 3, 2015, while Plaintiff ANDRE POUNALL was waiting to go to "sick call", Plaintiff vomited up his food, had chest pain, had throat pain, had dry throat and itchy throat, stomach pains, diarrhea, suffered dry heaving and passing gas and heard other inmates including some of the Plaintiffs herein, complaining about the lunch/food and calling out ot Defendant Campbell to call for emergency sick call.

636.    That on March 3, 2015, Defendant Johnson brought Plaintiff ANDRE POUNALL to the "pens"/cells in the medical clinic where he saw Plaintiff DURRELL WILLIAMS vomit up green "stuff" threw up, while waiting to be examined and treated by the clinic doctor.

637.    That on March 3, 2015, while at the clinic, Plaintiff ANDRE POUNALL knew that Plaintiff TROY SIDDONS showed the clinic nurse his remaining food form his tray and that the nurse told Plaintiff Siddons that the food looked "funny".

638.    That on March 3, 2015, while Plaintiff ANDRE POUNALL was at the medical clinic, one of the nurses who is a light-skinned African American female with short hair (name unknown to Plaintiff but known to the Defendants) told him that the contaminant looked like rat poison and, yet despite the foregoing, and despite knowing that Plaintiff ANDRE POUNALL consumed same and became ill including, but not limited to stomach pains, diarrhea, chest pains and vomiting, she provided Plaintiff with Maylox to make him go to the bathroom and sent him back to the "pens"/cell in the clinic to then be transported back to his cell in his housing area/unit.

639.    That on March 3, 2015 while Plaintiff ANDRE POUNALL was at the medical clinic being seen by the foregoing nurse, Plaintiff felt as of the foregoing clinic nurse did not believe him when he presented to her because she "acted like she did not care". That at this time, Plaintiff was also beginning to suffer from pains/throbbing to the right side of his head.

640.    That on March 3, 2015 while Plaintiff ANDRE POUNALL was placed back into the "pens"/cell of the clinic awaiting to be brought back to his cell in the housing area/unit, he saw Plaintiff DURRELL WILLIAMS being brought passed said "pens" area on a stretcher with an IV drip in his arm while at the same, time, Plaintiff ELLIS WILSON was being brought to the same "pens" where he told Plaintiff ANDRE POUNALL that Plaintiff TROY SIDDONS had just fainted and passed out right on the floor of the clinic.

641.    On March 3, 2015, while in the "pens"/cell of the medical clinic and having just seen Plaintiff Durrell Williams on a stretcher with an IV drip and learning that Plainitff Siddons had fainted and passed out, and as Plaintiff ANDRE POUNALL still felt sick and had vomited and suffered from chest pain, Plaintiff ANDRE POUNALL requested water and to go to the bathroom and as he began to step towards the door to the "pens"/cell in order to exit to use the bathroom and get some water, Defendant Johnson told Plaintiff to get back into the "pens". That

Plaintiff ANDRE POUNALL requested the water and to use the bathroom again and, in fear that he may die from whatever he and the other Plaintiffs consumed that made them all so seriously ill, he requested that he not be transported back to his cell in the Plaintiffs' housing unit as he wanted to be seen by a doctor to treat and test him for what he ate and for what caused him to suffer from chest pain, throat pain, dry throat, itchy throat and vomiting, and, for what had caused Plaintiff Siddons to faint and pass out and what caused Plaintiff Durrell Williams to require a stretcher for transport and an IV drip.

642. That in response to Plaintiff ANDRE POUNALL's foregoing requests, Defendant Johnson ordered him back into the "pens" and ordered Defendants Hanson, Henesen a/k/a "Hensen" to mace/pepper spray Plaintiff which Defendant did in Plaintiff's eyes as Defendant Johnson and others (names and positions known to Defendant but not known to Plaintiff) use excessive force, assaulted, battered, struck, hit, punched and kicked Plaintiff ANDRE POUNALL as they handcuffed him and thereafter, without any medical treatment for the contaminated food and illnesses he suffered therefrom, or for the injuries he sustained in the foregoing use of excessive force, left Plaintiff ANDRE POUNALL, in the clinic "pens"/cell for approximately one and one half hours.

643. That in an effort to cover up, lessen and/or mitigate the foregoing use of excessive force and denial of medical treatment to Plaintiff ANDRE POUNALL, Defendants Johnson, Hanson, Henesen a/k/a "Hensen" and the other officer involved in the use of force (names and positions known to Defendants), brought/filed internal Department of Corrections charges/specifications/infractions against Plaintiff ANDRE POUNALL, including charges of assault on a correction officer, and/or caused same to be brought/filed, and found him guilty of same and punished him with "box time."

644.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff ANDRE POUNALL consuming/eating the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff ANDRE POUNALL, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff ANDRE POUNALL in said Plaintiff's respective cell, Plaintiff ANDRE POUNALL sustained and suffered serious personal and physical injuries including, but not limited to: throat pain, chest pain, dry throat, itchy throat, dry heaving, vomiting, stomach pains, passing gas, pain to the right side of his head, migraines on the right side of his head, eye injury, diarrhea, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

645.    That as Plaintiff ANDRE POUNALL was continuing to feel sick and ill, including, but not limited to suffering from throat pain, chest pain, dry throat, itchy throat, dry heaving, vomiting, stomach pains, passing gas, pain to the right side of his head, migraines on the right side of his head, eye injury and diarrhea for several days after the March 3, 2015 consumption of the rat poison and aforementioned assault, and as it was still not yet determined, discovered or even tested by Defendants as to the identity of the contaminant that was causing him to be sick and ill, Plaintiff ANDRE POUNALL, from March 3, 2015 and continuing for thereafter, repeatedly demanded to be placed on/requested/logged in for "sick call" and/or to go to the medical clinic, repeatedly requested to be sent to an outside hospital/facility to be tested and treated and/or requested that his blood and/or urine be tested to identify what the contaminant in the March 3, 2015 lunch is so as to then provide Plaintiff with the timely, proper and adequate medical care/treatment for same but, despite knowing the foregoing and his repeated requests, Defendants denied/refused him same.

646.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff ANDRE POUNALL was forced to only eat sealed food/Kosher food and/or pre-packaged/pre-sealed food and/or food from commissary as he feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

647.    That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff ANDRE POUNALL knew that the kitchen pantry officer for Plaintiff's housing area in AMKC, to wit: 12 upper, was Defendant Thomas and, on March 3, 2015, because AMKC was placed on lockdown by the Defendants where they could not leave their respective cells, no inmate from Plaintiff's housing area of 12 upper was allowed to assist Defendant Thomas, as would normally be the practice, custom and policy of the Defendants, in the preparing, plating, serving, distributing and/or handing out of the meals to the inmates from 12 upper. Rather, on March 3, 2015, for the foregoing lunch meal/food that was served to Plaintiffs on same date, Defendant Thomas had two other inmates from another housing unit/area of AMKC to assist her with the preparation, cooking, plating and distribution of the food/meals/lunch on March 3, 2015 that was served, handed out, cooked, prepared, plated and handed out to Plaintiffs to eat on same March 3, 2015.

648.    That on March 3, 2015, prior to the Plaintiffs being served the foregoing contaminated food/lunch/meal on same date, Defendant Thomas engaged in a verbal fight with other inmates from Plaintiffs' housing area, none of those involved in same were any of the Plaintiffs herein, and, right as dinner was being served by Defendant Thomas on same date of March 3, 2015, Defendant Thomas stated to the Plaintiffs and the other inmates of 12 upper, with a sense of self satisfaction, in sum and substance, that they are mad because they got sick from

the foregoing contaminated lunch of same date. That Defendant Thomas had been engaging in verbal fights with inmates from Plaintiffs' housing area/unit for months prior to this March 3, 2015 incident.

649.     That it is Plaintiff ANDRE POUNALL's understanding that the only individuals to have access to the foregoing contaminated lunch/meal for cooking, preparation and plating was Defendant Thomas and the two Spanish inmates she picked to assist her with same.

650.     That, upon information and belief, approximately four to five days after this March 3, 2015 incident, Defendant Feeney came to AMKC and met with some of the Plaintiffs who gave her a sample of the contaminated food so that the Defendants could test same.

651.     That it is Plaintiff ANDRE POUNALL's understanding that some of the other Plaintiffs saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found and that said saved sample was provided to be tested by an outside independent laboratory which, to date, was, in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison. See Exhibit "A", *supra.*.

652.     That to date, it is Plaintiff ANDRE POUNALL's understanding that the sample provided to and possessed by Defendant Feeney, including the sample provided to her has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

653.     That to date, Plaintiff ANDRE POUNALL requests and demands herein that he be sent out to/transported to an outside hospital/medical facility in order to obtain the proper medical testing, care and treatment for having consumed rat poison on March 3, 2015 that was

served to him by Defendants while Plaintiff was in the exclusive custody, care and control of the Defendants.

654.     That as Plaintiff ANDRE POUNALL was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

655.     That as a direct and proximate result of the foregoing, Plaintiff ANDR POUNALL sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, throat pain, chest pain, dry throat, itchy throat, dry heaving, vomiting, stomach pains, passing gas, pain to the right side of his head, migraines on the right side of his head, eye injury, diarrhea, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering, use of excessive force, assault, battery and denial of proper, timely and/or adequate medical care and treatment.

656.     That as a direct and proximate result of the foregoing, Plaintiff ANDRE POUNALL filed an Inmate Grievance.

657.     That as a direct and proximate result of the foregoing, Plaintiff ANDRE POUNALL claims damages herein.

PLAINTIFF DUWAIN BOYCE:

658.     That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff DUWAIN BOYCE was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

659.   That on March 3, 2015, Plaintiff DUWAIN BOYCE, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

660.   That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff DUWAIN BOYCE, by the Defendants in their respective cells and, as such, Plaintiff DUWIANBOYCE was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff DUWAIN BOYCE on March 3, 2015, to wit: meatloaf, bread, vegetables, corn, cabbage and/or juice.

661.   That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff DUWAIN BOYCE, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff DUWAIN BOYCE in said Plaintiff's respective cell.

662.   That on March 3, 2015, Plaintiff DUWAIN BOYCE received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice and consumed/ate a portion of same including the meatloaf and the juice.

663.   That on March 3, 2015 and continuing, after Plaintiff DUWAIN BOYCE consumed/ate a portion of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff DUWAIN BOYCE, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice, Plaintiff DUWAIN BOYCE looked at the remnants of same food left on his tray and saw blue "pebbles" in the food and, within approximately ten to twenty minutes after consuming same, Plaintiff became ill

including, but not limited to: stomach cramps, vomiting, continuous vomiting up blood and immediately requested of the correction officer on duty/post that he be brought to the medical clinic.

664.    That on March 3, 2015, after Plaintiff DUWAIN BOYCE ate/consumed the foregoing contaminated food/lunch and became seriously ill including, but not limited to: stomach cramps, vomiting, continuous vomiting up blood, and after his repeated requests to go to the medical clinic to be tested and treated for same, Defendants finally brought Plaintiff to the medical clinic approximately four to four and one half hours later where Plaintiff was seen by Defendant Park who told Plaintiff DUWAIN BOYCE, in sum and substance, to drink water to flush his system and, despite knowing of all of the foregoing, just sent Plaintiff back to his cell.

665.    That on March 3, 2015, while Plaintiff was waiting to be brought to the medical clinic, he continued to vomit and vomit blood in his cell.

666.    That on March 3, 2015, and continuing thereafter, as Plaintiff DUWAIN BOYCE remained seriously ill including vomiting up blood, he repeatedly requested of the Defendants including Defendant Park, that he be given "sick call", that he be brought to the medical clinic, that he be treated at the AMKC medical clinic for same, that his blood and/or urine be tested to determine the identity of the contaminant so that he can then be provided with the proper, timely and adequate medical care/treatment for same and, if Defendants would not do same, as they had been refusing to do, then to send Plaintiff DUWAIN BOYCE to an outside hospital for testing and treatment but, despite his repeated requests, and despite knowing that Plaintiff continued to vomit blood, Defendants refused/denied him same.  Rather, Defendants, despite knowing of Plaintiff's serious medical ailments/conditions, transferred him to an Upstate Correctional Facility.

667. That on March 3, 2015 and continuing thereafter, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff DUWAIN BOYCE consuming/eating the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff DUWAIN BOYCE, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff DUWAIN BOYCE in said Plaintiff's respective cell, Plaintiff DUWAIN BOYCE sustained and suffered serious personal and physical injuries including, but not limited to: stomach cramps, vomiting, continuous severe vomiting up blood, low blood count, internal stomach bleeding, medical hospitalizations, prescribed iron pills, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

668. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff DUWAIN BOYCE repeatedly requested of the doctors, nurses, medical staff, medical personnel, and the correction officers, including Defendant Park, that he not be sent back to his cell, that he be treated at the AMKC Medical Clinic/Facility, that his urine and blood be tested and/or that he be sent to an outside hospital/facility in order for his urine and blood to be tested in order to determine what the contaminant was so as to then receive the proper, timely and necessary medical care/treatment in order to treat same but, despite Plaintiff having consumed rat poison, despite his suffering from stomach cramps, vomiting, continuous severe vomiting up blood, despite his repeated requests for medical care and testing, the Defendants and their agents, servants, employees, doctors, nurses, medical staff and correction officers denied/refused him same and, instead, transported him to an Upstate Correctional Facility.

669. That as Plaintiff DUWAIN BOYCE was continuing to feel sick and ill, including, but not limited to suffering from vomiting, vomiting blood, diarrhea, body shakes, headaches and

stomach pain for days after the March 3, 2015 consumption of the rat poison, and as it was still not yet determined, discovered or even tested by Defendants as to the identity of the contaminant that was causing him to be sick and ill, Plaintiff DUWAIN BOYCE, from March 3, 2015 and continuing for days thereafter, repeatedly demanded to be placed on/requested/logged in for "sick call" and/or to go to the medical clinic so that he could be medically treated but the Defendants repeatedly denied/refused same as set forth above despite Plaintiffs' serious medical conditions/ailments of which the Defendants were aware.

670.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff DUWAIN BOYCE was forced to refuse meals and/or to request only sealed of commissary food as he does not trust the food/meals prepared by the Defendants and feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

671.    That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff DUWAIN BOYCE knew that the kitchen pantry officer for Plaintiff's housing area in AMKC, to wit: 12 upper, was Defendant Thomas and, on March 3, 2015, because AMKC was placed on lockdown by the Defendants where they could not leave their respective cells, no inmate from Plaintiff's housing area of 12 upper was allowed to assist Defendant Thomas, as would normally be the practice, custom and policy of the Defendants, in the preparing, plating, serving, distributing and/or handing out of the meals to the inmates from 12 upper. Rather, it is Plaintiff DUWIAN BOYCE's understanding that on March 3, 2015, for the foregoing lunch meal/food that was served to Plaintiffs on same date, Defendant Thomas had two other inmates to assist her with the preparation, cooking, plating and distribution of the food/meals/lunch on March 3, 2015

that was served, handed out, cooked, prepared, plated, served and handed out to Plaintiffs to eat on same March 3, 2015 by Defendants.

672.    That on March 3, 2015, prior to the Plaintiffs being served the foregoing contaminated food/lunch/meal on same date, Defendant Thomas engaged in a verbal fight with other inmates from Plaintiffs' housing area, none of those involved in same were any of the Plaintiffs herein, and, after the foregoing contaminated lunch was served to and consumed by Plaintiffs, Defendant Thomas came back And told the housing unit/area, including to Plaintiffs, in sum and substance, that they (meaning Plaintiffs and the housing unit/area) are "just mad" because of the food.

673.    That it is Plaintiff DUWAIN BOYCE's understanding that the only individuals to have access to the foregoing contaminated lunch/meal for cooking, preparation and plating was Defendant Thomas and the two other inmates she picked to assist her with same.

674.    That, it is Plaintiff DUWAIN BOYCE's understanding that approximately four to five days after this March 3, 2015 incident, Defendant Feeney came to AMKC and met with some of the Plaintiffs who gave her a sample of the contaminated food so that the Defendants could test same. That Plaintiff's remnants of food was confiscated by a correction officer and, as such, could not be saved by Plaintiff

675.    That it is Plaintiff DUWAIN BOYCE's understanding that from March 3, 2015 and continuing, some of the other Plaintiffs saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found as they did with the contaminated food that Plaintiff DUWIAN BOYCE had saved.

676.     That it is Plaintiff DUWAIN BOYCE's understanding that the sample of the contaminated food that was saved by some of the Plaintiffs herein was given to be tested by an independent outside laboratory and that, to date, this foregoing sample of contaminated food was, in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison. See Exhibit "A", *supra.*

677.     That to date, it is Plaintiff DUWAIN BOYCE's understanding that the sample provided to and possessed by Defendant Feeney has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

678.     That to date, Plaintiff DUWAIN BOYCE requests and demands herein that he be sent out to/transported to an outside hospital/medical facility in order to obtain the proper medical testing, care and treatment for having consumed rat poison on March 3, 2015 that was served to him by Defendants while Plaintiff was in the exclusive custody, care and control of the Defendants.

679.     That as Plaintiff DUWIAN BOYCE was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

680.     That as a direct and proximate result of the foregoing, Plaintiff DESHAUN GREGORY sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, stomach cramps, vomiting, continuous severe vomiting up blood, low blood count, internal stomach bleeding, medical hospitalizations, prescribed iron pills, mental anguish, shock, fear, emotional distress

(intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering and denial of proper, timely and/or adequate medical care and treatment.

681. That as a direct and proximate result of the foregoing, Plaintiff DUWAIN BOYCE claims damages herein.

PLAINTIFF DURRELL WILLIAMS:

682. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff DURRELL WILLIAMS was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

683. That on March 3, 2015, Plaintiff DURRELL WILLIAMS, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

684. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff DURRELL WILLIAMS, by the Defendants in their respective cells and, as such, Plaintiff DURRELL WILLIAMS was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff DURRELL WILLIAMS on March 3, 2015, to wit: meatloaf, bread, vegetables, corn, cabbage and/or juice.

685. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff ANDRE POUNALL, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff DURRELL WILLIAMS in said Plaintiff's respective cell.

686. That on March 3, 2015, Plaintiff DURRELL WILLIAMS received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice and consumed/ate most of same.

687. That on March 3, 2015 and continuing, after Plaintiff DURRELL WILLIAMS consumed/ate most of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff DURRELL WILLIAMS, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice, Plaintiff DURRELL WILLIAMS became ill/sick and, when he looked at the remnants of the foregoing lunch in the tray he was served/provided by Defendants, he saw bluish-greenish "pebbles" in same including in the cabbage.

688. That on March 3, 2015, after consuming the foregoing contaminated lunch, Plaintiff DURRELL WILLIAMS became ill including, but not limited to: vomiting, vomiting blood and stomach pain and, called for Defendant Campbell who, in turn called for Defendant Johnson and Plaintiff requested from both Defendants Campbell and Johnson to be brought to medical. That at around this same time, Plaintiff DURRELL WILLIAMS heard other inmates including some of the other Plaintiffs herein yelling out to Defendant Campbell for medical and that something was wrong with the food.

689. That on March 3, 2015, while Plaintiff was waiting to go to medical and while requesting same from Defendants Campbell and Johnson, Plaintiff DURRELL WILLIAMS vomited up blood.

670. That on March 3, 2015, when Plaintiff DURRELL WILLIAMS was finally brought to the medical clinic, Plaintiff had brought some of the leftover contaminated food, to wit: some meatloaf and cabbage, from his tray and showed same to a nurse with brown skin, who

is short and has a mole and a West Indian accent (name known to Defendants but not known to Plaintiff) who viewed same and told Plaintiff, in sum and substance, that same was rat poison. That Defendant Park saw Plaintiff's contaminated food and told Plaintiff to throw the food he saved away. That even though this nurse told Plaintiff that the contaminant was rat poison, and even though Plaintiff was vomiting blood, vomiting in the medical clinic, vomited in front of Doctor Park and required an IV and a stretcher, this nurse told Plaintiff, in sum and substance: "don't sh...t all over the place."

671.    That on March 3, 2015, while Plaintiff DURRELL WILLIAMS was in the medical clinic, as he vomited blood and vomited twice while at the clinic, including in the "pens" at the clinic and in front of Defendant Park, Plaintiff DURRELL WILLIAMS was placed on an IV as, at some point, Plaintiff passed out/fainted which required him to be placed on a stretcher and on an IV drip.

672.    That on March 3, 2015, Plaintiff DURRELL WILLIAMS showed Defendant Campbell his tray of food and, in response to viewing same, Defendant Campbell told Plaintiff, in sum and substance, that the food looked "funny".

673.    That on March 3, 2015 and continuing, as Plaintiff had been vomiting, vomiting blood, suffering from diarrhea, and passed out/fainted requiring an IV and a stretcher, Plaintiff DURRELL WILLIAMS repeatedly requested that his blood and/or urine be tested so as to determine the identity of the contaminant so that then Plaintiff could be provided with the timely, proper and adequate medical care/treatment for same but, despite knowing of all of the foregoing and despite Plaintiff's repeated requests, Defendants including Defendant Park, denied/refused him same.

674.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff DURRELL WILLIAMS consuming/eating the

foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff DURRELL WILLIAMS, to wit: meatloaf, bread, cabbage, corn, vegetables and/or juice was provided and served to Plaintiff DURRELL WILLIAMS in said Plaintiff's respective cell, Plaintiff DURRELL WILLIAMS sustained and suffered serious personal and physical injuries including, but not limited to: vomiting, vomiting blood, diarrhea, passing out, loss of consciousness, fainting, required IV treatment, required placement on a stretcher, stomach pains, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

675.    That as Plaintiff DURRELL WILLIAMS was continuing to feel sick and ill, including, but not limited to suffering from vomiting, vomiting blood, diarrhea, passing out, loss of consciousness, fainting, required IV treatment, required placement on a stretcher, stomach pains for days after the March 3, 2015 consumption of the rat poison and aforementioned assault, and as it was still not yet determined, discovered or even tested by Defendants as to the identity of the contaminant that was causing him to be sick and ill, Plaintiff DURRELL WILLIAMS, from March 3, 2015 and continuing for thereafter, repeatedly demanded to be placed on/requested/logged in for "sick call" and/or to go to the medical clinic, repeatedly requested to be sent to an outside hospital/facility to be tested and treated and/or requested that his blood and/or urine be tested to identify what the contaminant in the March 3, 2015 lunch is so as to then provide Plaintiff with the timely, proper and adequate medical care/treatment for same but, despite knowing the foregoing and his repeated requests, Defendants denied/refused him same.

676.    That as a result of the Defendants' repeated denial of Plaintiff's repeated demands for medical testing and attention, including, but not limited to testing his blood and /or urine, Plaintiff did not want to be sent back to his cell and, when he refused, on March 3, 2015 some of

Defendants' correction officers (names and rank known to Defendants but unknown to Plaintiff) assaulted, battered, struck, hit Plaintiff DURRELL WILLIAMS with their radios/walkie-talkies causing him to suffer and sustain physical injuries including cuts, lacerations, bruising and swelling to his face, head and/or nose; the scars from which, upon information and belief, may be permanent. That despite the fact that no internal infractions, charges or specifications for use of force or assault or otherwise were filed against Plaintiff for the foregoing, Defendants nevertheless held him in "box time" from on or about March 3, 2015 to on or about March 16, 2015 where Plaintiff received no medical treatment.

677.    That on March 3, 2015, when Defendants continued to refuse to test Plaintiff's blood and/or urine, in an effort to compel them to take and test same so as to determine what the contaminant is that is causing him to vomit blood and faint, Plaintiff DURRELL WILLIAMS cut himself so as to be sent out to an outside clinic to treat same so as to have his blood tested/taken.

678.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff DURRELL WILLIAMS was forced to only eat sealed food/Kosher food and/or pre-packaged/pre-sealed food and/or food from commissary as he feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

679.    That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff DURRELL WILLIAMS knew that the kitchen pantry officer for Plaintiff's housing area in AMKC, to wit: 12 upper, was Defendant Thomas and, on March 3, 2015, because AMKC was placed on lockdown by the Defendants where they could not leave their respective cells, no inmate from Plaintiff's housing area of 12 upper was allowed to assist Defendant Thomas, as

would normally be the practice, custom and policy of the Defendants, in the preparing, plating, serving, distributing and/or handing out of the meals to the inmates from 12 upper. Rather, on March 3, 2015, for the foregoing lunch meal/food that was served to Plaintiffs on same date, Defendant Thomas had two other inmates from another housing unit/area of AMKC to assist her with the preparation, cooking, plating and distribution of the food/meals/lunch on March 3, 2015 that was served, handed out, cooked, prepared, plated and handed out to Plaintiffs to eat on same March 3, 2015.

680.    That on March 3, 2015, prior to the Plaintiffs being served the foregoing contaminated food/lunch/meal on same date, Defendant Thomas engaged in a verbal fight with other inmates from Plaintiffs' housing area, none of those involved in same were any of the Plaintiffs herein, and, prior thereto had verbal fights with inmates from Plaintiffs' housing area/unit in which she used profane language and/or cursed at the inmates including with Plaintiff Durrell Williams herein.

681.    That it is Plaintiff DURRELL WILLIAMS's understanding that the only individuals to have access to the foregoing contaminated lunch/meal for cooking, preparation and plating was Defendant Thomas and the two other inmates she picked to assist her with same.

682.    That, upon information and belief, approximately four to five days after this March 3, 2015 incident, Defendant Feeney came to AMKC and met with some of the Plaintiffs who gave her a sample of the contaminated food so that the Defendants could test same.

683.    That it is Plaintiff DURRELL WILLIAMS's understanding that some of the other Plaintiffs saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found and that said saved sample was provided to be tested

by an outside independent laboratory which, to date, was, in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison. See Exhibit "A", *supra.*

684.    That to date, it is Plaintiff DURRELL WILLIAMS's understanding that the sample provided to and possessed by Defendant Feeney, including the sample provided to her has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

685.    That to date, Plaintiff DURRELL WILLIAMS requests and demands herein that he be sent out to/transported to an outside hospital/medical facility in order to obtain the proper medical testing, care and treatment for having consumed rat poison on March 3, 2015 that was served to him by Defendants while Plaintiff was in the exclusive custody, care and control of the Defendants.

686.    That as Plaintiff DURRELL WILLIAMS was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

687.    That as a direct and proximate result of the foregoing, Plaintiff DURRELL WILLIAMS sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, vomiting, vomiting blood, diarrhea, passing out, loss of consciousness, fainting, required IV treatment, required placement on a stretcher, stomach pains, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm,