anxiety, pain and suffering, and denial of proper, timely and/or adequate medical care and treatment.

688. That as a direct and proximate result of the foregoing, Plaintiff DURRELL WILLIAMS filed an Inmate Grievance.

689. That as a direct and proximate result of the foregoing, Plaintiff DURRELL WILLIAMS claims damages herein.

PLAINTIFF JOHN AMUSO:

690. That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff JOHN AMUSO was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

691. That on March 3, 2015, Plaintiff JOHN AMUSO, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

692. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff JOHN AMUSO, by the Defendants in their respective cells and, as such, Plaintiff JOHN AMUSO was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff JOHN AMUSO on March 3, 2015, to wit: meatloaf, bread, vegetables, cabbage and/or juice.

693. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff JOHN AMUSO, to wit: meatloaf, bread,

cabbage, vegetables and/or juice was provided and served to Plaintiff JOHN AMUSO in said Plaintiff's respective cell.

694.     That on March 3, 2015, Plaintiff JOHN AMUSO received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served on a cart by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, vegetables and/or juice and consumed/ate almost all of same including both slices of the meatloaf.

695.     That on March 3, 2015 and continuing, Plaintiff JOHN AMUSO consumed/ate almost all of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff JOHN AMUSO, to wit: meatloaf, bread, cabbage, vegetables and/or juice and, after eating/consuming same, became seriously ill including, but not limited to: tingling in his arms, "pins and needles" feeling in his arms, chronic migraines, headaches, vomiting up blood, cold sweats, body feeling hot, chills and diarrhea and immediately called for and told a female correction officer on duty/post at the time (name and rank unknown to Plaintiff but known to Defendants) that he was sick and, in response to same, she told Plaintiff JOHN AMUSO, in sum and substance, that this incident was just a "stunt to get out of the cell while on lockdown".

696.     That on March 3, 2015, while Plaintiff JOHN AMUSO was suffering from medical conditions/ailments including, but not limited to vomiting blood and diarrhea, Plaintiff saw two other inmates vomiting blood as well.

697.     That on March 3, 2015, and continuing, and at all relevant times herein mentioned, Plaintiff JOHN AMUSO repeatedly requested to be placed on/sent to "sick call", to go to the medical clinic, to be brought to an outside hospital and/or to have his blood and/or urine tested so as to determine the identity of the contaminant so that then, Plaintiff could receive the timely, proper and/or adequate medical testing and treatment for same.

698.     That on March 3, 2015, and continuing, despite all of Plaintiff's repeated requests for medical attention, care and treatment, and despite knowing that Plaintiff JOHN AMUSO was suffering from vomiting blood and diarrhea, Defendants denied/refused Plaintiff any medical treatment or care for same; including when Plaintiff wrote his name in for "sick call" and, Defendants never brought him to see the medical clinic or the clinic doctor.

699.     That it is Plaintiff JOHN AMUSO's understanding that other inmates including some of the other Plaintiffs named herein, showed Defendant Campbell the foregoing contaminated lunch/food from their respective trays and that Defendant Campbell confirmed that there was something wrong with the foregoing lunch/food.

700.     That on March 3, 2015 and continuing, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff JOHN AMUSO consuming/eating the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff JOHN AMUSO, to wit: meatloaf, bread, cabbage, vegetables and/or juice that was provided and served to Plaintiff JOHN AMUSO in said Plaintiff's respective cell, Plaintiff JOHN AMUSO sustained and suffered serious personal and physical injuries including, but not limited to: tingling in his arms, "pins and needles" feeling in his arms, chronic migraines, headaches, vomiting up blood, cold sweats, body feeling hot, chills, diarrhea, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

701.     That on March 3, 2015, and continuing, and at all relevant times herein mentioned, Plaintiff JOHN AMUSO made repeated requests for medical care and treatment including but not limited to: being placed on sick call, medical testing to determine what was the contaminant n the foregoing lunch/food so as to determine the proper medical care to then be provided, testing of Plaintiff's blood and/or urine to identify what the contaminant was, and/or to

be sent to an outside hospital/facility in order for his urine and blood to be tested in order to determine what the contaminant was so as to then receive the proper, timely and necessary medical care/treatment in order to treat same but, despite Plaintiffs' requests and despite knowing that Plaintiff JOHN AMUSO suffered from stomach pain, stomach ache, headaches, vomiting and diarrhea, and continued to suffer from same, the Defendants denied/refused same requests.

702.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff JOHN AMUSO was forced to only eat sealed food and/or food from commissary as he feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

703.    That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff JOHN AMUSO knew and/or learned that the kitchen pantry officer for Plaintiff's housing area in AMKC was Defendant Thomas and, on March 3, 2015, because AMKC was placed on lockdown by the Defendants where they could not leave their respective cells, no inmate from Plaintiff's housing area was allowed to assist Defendant Thomas, as would normally be the practice, custom and policy of the Defendants, in the preparing, plating, serving, distributing and/or handing out of the meals to the inmates.

704.    That on March 3, 2015, Plaintiff JOHN AMUSO knew and/or learned that it was Defendant Thomas who wheeled in the cart of food carrying the trays of the foregoing contaminated food/lunch that was distributed and served to the Plaintiffs herein to consume and eat on same date of March 3, 2015.

705.    That prior to March 3, 2015, Plaintiff JOHN AMUSO knew and/or learned from other inmates in his housing area/unit that Defendant Thomas does not like their housing area/unit and is always verbally fighting with the inmates.

706.    That it is Plaintiff JOHN AMUSO's understanding that the only individual to have access to the foregoing contaminated lunch/meal for cooking, preparation and plating was Defendant Thomas.

707.    That it is Plaintiff JOHN AMUSO's understanding that, subsequent to this March 3, 2015 incident, Defendant Feeney came to AMKC and meet with some of the Plaintiffs herein to interview them and that some of the Plaintiffs gave Defendant Feeney samples of the contaminated food/lunch so that the Defendants could test same.

708.    That from March 3, 2015 and continuing, some of the Plaintiffs saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found.

709.    That it is Plaintiff JOHN AMUSO's understanding that other Plaintiffs provided a sample of their respective food to be tested by an outside independent laboratory and that to date, said samples were in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison. See Exhibit "A", *supra*.

710.    That to date, it is Plaintiff JOHN AMUSO's understanding that the sample provided to and possessed by Defendant Feeney has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

711.     That to date, Plaintiff JOHN AMUSO. requests and demands herein that he be sent out to/transported to an outside hospital/medical facility in order to obtain the proper medical testing, care and treatment for having consumed rat poison on March 3, 2015 that was served to him by Defendants while Plaintiff was in the exclusive custody, care and control of the Defendants.

712.     That as Plaintiff CLARENCE WOODWARD, JR. was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

713.     That as a direct and proximate result of the foregoing, Plaintiff JOHN AMUSO sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, tingling in his arms, "pins and needles" feeling in his arms, chronic migraines, headaches, vomiting up blood, cold sweats, body feeling hot, chills, diarrhea, mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering and denial of proper, timely and/or adequate medical care and treatment.

714.     That as a direct and proximate result of the foregoing, Plaintiff JOHN AMUSO claims damages herein.

PLAINTIFF MERSIM KLOBUCISTA:

715.     That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Plaintiff MERSIM KLOBUCISTA was incarcerated with/in the New York City Department of Corrections, Rikers Island Correctional Facility and was housed in the Anna M. Kross Center (AMKC).

716. That on March 3, 2015, Plaintiff MERSIM KLOBUCISTA, being housed in AMKC, was placed on lockdown by the Defendants and, as such, was not permitted by Defendants to exit his cell including not being allowed to exit his cell for meals.

717. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the meals for the inmates on March 3, 2015 were given to them, including to Plaintiff MERSIM KLOBUCISTA, by the Defendants in their respective cells and, as such, Plaintiff MERSIM KLOBUCISTA was not allowed to exit his cell for said meals including for the lunch served by Defendants to Plaintiffs including Plaintiff MERSIM KLOBUCISTA on March 3, 2015, to wit: meatloaf, bread, vegetables, cabbage and/or juice.

718. That on March 3, 2015, as part of AMKC being placed on lockdown by the Defendants, the foregoing lunch meal ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff MERSIM KLOBUCISTA, to wit: meatloaf, bread, cabbage, vegetables and/or juice was provided and served to Plaintiff MERSIM KLOBUCISTA in said Plaintiff's respective cell.

719. That on March 3, 2015, Plaintiff MERSIM KLOBUCISTA received the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served on a cart by Defendants to him in his cell, to wit: meatloaf, bread, cabbage, vegetables and/or juice and consumed/ate most of same including two servings of meatloaf.

720. That on March 3, 2015 and continuing, Plaintiff MERSIM KLOBUCISTA consumed/ate most of the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff MERSIM KLOBUCISTA, to wit: meatloaf, bread, cabbage, vegetables and/or juice and, after eating/consuming same, became seriously ill including, but not limited to: vomiting, diarrhea, hot sweats, cold sweats, nausea, hot flashes, cold flashes, sweating and loss of appetite and

immediately called for and the correction officer on duty/post at the time (name and rank unknown to Plaintiff but known to Defendants) to tell him that he was sick and that he needed medical attention, care and treatment and needed to go to "sick call"/the medical clinic.

721.    That on March 3, 2015 and continuing thereafter, Plaintiff MERSIM KLOBUCISTA repeatedly requested to go to "sick call"/medical clinic to be tested and treated but despite same, and despite Defendants knowing that Plaintiff was vomiting and having diarrhea, Defendants denied/refused him same.

722.    That on March 3, 2015, and continuing, and at all relevant times herein mentioned, Plaintiff MERSIM KLOBUCISTA repeatedly requested to be placed on/sent to "sick call", to go to the medical clinic, to be brought to an outside hospital and/or to have his blood and/or urine tested so as to determine the identity of the contaminant so that then, Plaintiff could receive the timely, proper and/or adequate medical testing and treatment for same.

723.    That on March 3, 2015, and continuing, despite all of Plaintiff's repeated requests for medical attention, care and treatment, and despite knowing that Plaintiff MERSIM KLOBUCISTA was suffering from vomiting and diarrhea, Defendants denied/refused Plaintiff any medical treatment or care for same.

724.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, as a direct and proximate result of Plaintiff MERSIM KLOBUCISTA consuming/eating the foregoing lunch meal that was ordered, cooked, prepared, distributed, plated, handed out, fed, provided and served by Defendants to Plaintiff MERSIM KLOBUCISTA, to wit: meatloaf, bread, cabbage, vegetables and/or juice that was provided and served to Plaintiff MERSIM KLOBUCISTA in said Plaintiff's respective cell, Plaintiff MERSIM KLOBUCISTA sustained and suffered serious personal and physical injuries including, but not limited to: vomiting, diarrhea, hot sweats, cold sweats, nausea, hot flashes, cold flashes, sweating, loss of appetite

mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety and pain and suffering.

725.    That on March 3, 2015, and continuing, and at all relevant times herein mentioned, Plaintiff MERSIM KLOBUCISTA made repeated requests for medical care and treatment including but not limited to: being placed on sick call, medical testing to determine what was the contaminant n the foregoing lunch/food so as to determine the proper medical care to then be provided, testing of Plaintiff's blood and/or urine to identify what the contaminant was, and/or to be sent to an outside hospital/facility in order for his urine and blood to be tested in order to determine what the contaminant was so as to then receive the proper, timely and necessary medical care/treatment in order to treat same but, despite Plaintiffs' requests and despite knowing that Plaintiff MERSIMKLOBUCISTA suffered from vomiting and diarrhea, and continued to suffer from same, the Defendants denied/refused same requests.

726.    That as a direct and proximate result of being served to eat and eating the foregoing contaminated food that the Defendants served to Plaintiff on March 3, 2015 and becoming seriously ill as a direct and proximate result therefrom, Plaintiff MERSIM KLOBUCISTA was forced to only eat sealed food and/or food from commissary as he feared eating any food cooked, prepared, plated, served, handed out and or fed by the Defendants and feared becoming seriously ill and/or losing his life from same.

727.    That on March 3, 2015, and at all relevant times herein mentioned, Plaintiff MERSIM KLOBUCISTA learned that the kitchen pantry officer for Plaintiff's housing area in AMKC was Defendant Thomas and, on March 3, 2015, because AMKC was placed on lockdown by the Defendants where they could not leave their respective cells, no inmate from Plaintiff's housing area was allowed to assist Defendant Thomas, as would normally be the

practice, custom and policy of the Defendants, in the preparing, plating, serving, distributing and/or handing out of the meals to the inmates.

728.    That it is Plaintiff MERSIM KLOBUCISTA's understanding that the only individual to have access to the foregoing contaminated lunch/meal for cooking, preparation and plating was Defendant Thomas.

729.    That it is Plaintiff MERSIMKLOBUCISTA's understanding that, subsequent to this March 3, 2015 incident, Defendant Feeney came to AMKC and meet with some of the Plaintiffs herein to interview them and that some of the Plaintiffs gave Defendant Feeney samples of the contaminated food/lunch so that the Defendants could test same.

730.    That from March 3, 2015 and continuing, Plaintiff MERSIMKLOBUCISTA learned that some of the Plaintiffs saved portions of the foregoing contaminated food/lunch from their respective trays despite Defendants and/or their agents, servants, employees and correction officers, who knew of this March 3, 2015 incident, coming to the Plaintiffs' cells, searching same and confiscating and throwing out the saved food that they found.

731.    That it is Plaintiff MERSIM KLOBUCISTA's understanding that other Plaintiffs provided a sample of their respective food to be tested by an outside independent laboratory and that to date, said samples were in fact, tested by an outside and independent laboratory which has confirmed that same, in fact, contained rat poison. See Exhibit "A", *supra.*

732.    That to date, it is Plaintiff MERSIM KLOBUCISTA's understanding that the sample provided to and possessed by Defendant Feeney has yet to be tested by the Defendants and/or that the Defendants are not in possession of the results of such testing conducting by and/or on behalf of the Defendants.

733.    That as Plaintiff MERSIM KLOBUCISTA was denied the timely, proper and/or adequate medical care and testing by Defendant herein, as a direct and proximate result of the

foregoing, the rat poison that Defendants caused him to consume on March 3, 2015 has been caused to go untreated and remain in his system thereby causing Plaintiff to fear and be unaware of the severity of same, of the effects of same and of the lasting and/or long term effects of same.

734.    That as a direct and proximate result of the foregoing, Plaintiff MERSIM KLOBUCISTA sustained and suffered serious personal, physical and psychological injuries and damages herein including, but not limited to: consumption of rat poison, vomiting, diarrhea, hot sweats, cold sweats, nausea, hot flashes, cold flashes, sweating, loss of appetite mental anguish, shock, fear, emotional distress (intentional and negligent), psychological trauma, fear of dying, fear of physical bodily harm, anxiety, pain and suffering and denial of proper, timely and/or adequate medical care and treatment.

735.    That as a direct and proximate result of the foregoing, Plaintiff MERSIMKLOBUCISTA claims damages herein.

## DAMAGES

736.    As a direct and proximate result of the foregoing acts, omissions, negligence, conduct, failures of the Defendants, the Plaintiffs suffered injuries and damages including, but not limited to:

a.    Violation of their rights under the Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States and Article One, Section Twelve of the New York State Constitution and laws of the State of New York;

b.    Physical injuries, pain and suffering, extreme fear, emotional and psychological, trauma, mental anguish, loss of enjoyment of life, emotional distress (both intentional and negligent);

c.    Damages pursuant to 42 U.S.C. §§1981, 1983, 1986 and 1988; and

d.    Punitive damages.

737.    That the e physical, emotional and psychological injuries/consequences/damages suffered and sustained by Plaintiffs herein as a direct result of the Defendants' actions, conduct, omissions, negligence and/or failures continue to date and, upon information and belief, will continue into the future.

## CAUSES OF ACTION

### COUNT I

**42 U.S.C. Section 1983—UNREASONABLE AND EXCESSIVE FORCE ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS FOR THE CONTAMINATED MEATLOAF**

738.    Plaintiffs repeat, re-allege, reiterate and reassert each and every allegation and factual allegation contained in paragraphs of the Complaint numbered "1" to "736" as if more fully set forth at length herein.

739.    That on March 3, 2015, by Defendants serving, cooking, preparing, plating, handing out and distributing the foregoing contaminated lunch/food, which contained rat poison and caused Plaintiffs to become seriously ill, to Plaintiffs for Plaintiffs to consume, eat, which they in fact did consume/eat, and/or caused to be served, cooked, plated, prepared, handed out and/or distributed to Plaintiffs, Defendants committed unreasonable and excessive force against the Plaintiffs as same is an unlawful attack, assault, use of excessive force and/or battery against the Plaintiffs herein.

740.    That by their conduct, actions, failures and/or omissions herein as set forth in detail above, all of the Defendants named herein, acting under the color of law, in the scope of their employment and authority and in concert with one another, deprived Plaintiffs of their Constitutional rights to be free from excessive and unreasonable force by intentionally, maliciously, negligently, grossly negligently, wantonly, recklessly and with deliberate

indifference to human life and/or to the lives, safety, health, well being and/or physical health of the Plaintiffs placed, cooked, prepared, plated, served, handed out and/or distributed the foregoing lunch/food that was contaminated with rat poison, and/or caused same to be placed, cooked, prepared, plated, served, handed out and/or distributed to Plaintiffs for Plaintiffs to consume, which in fact they did, on March 3, 2015, causing thereby Plaintiffs to suffer and sustain serious physical, personal and psychological injuries including, but not limited to: consumption of rat poison, nosebleeds, vomiting, vomiting blood, diarrhea, diarrhea with blood, fainting, loss of consciousness, passing out, chest pains, stomach pains, dehydration, denial of medical care/treatment, anxiety, fear of death, mental anguish, emotional distress (intentional and negligent) and, related ailments/medical conditions as set forth in detail above.

741.    That the foregoing was committed against the Plaintiffs without any justification, cause or good cause and without the provocation or fault of the Plaintiffs herein.

742.    That as a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY –THREE MILLION DOLLARS ($23,000,000.00).

## COUNT II

### 42 U.S.C. Section 1983—UNREASONABLE AND EXCESSIVE FORCE ON BEHALF OF PLAINTIFFS ANDRE POUNALL, DURRELL WILLIAMS AND ANTHONY MATTHEWS

743.    Plaintiffs repeat, re-allege, reiterate and reassert each and every allegation and factual allegation contained in paragraphs of the Complaint numbered "1" to "742" as if more fully set forth at length herein.

744.    That on March 3, 2015, by Defendants Johnson, Hanson, Henesen a/k/a "Hensen" and the "JOHN DOES" AND "JANE DOES" assaulting, battering, using excessive force, hitting, striking, punching, kicking, pepper-spraying, striking with their radios/walkie-talkies

against Plaintiffs ANDRE POUNALL, DURRELL WILLIAMS AND ANTHONY MATTHEWS as set forth in detail above when said Plaintiffs requested medical care, medical treatment, to have their blood and/or urine tested, to not go back to their cells and to be treated at AMKC and/or to be transported to an outside hospital/facility to be medically treated and tested, which, in turn, caused said Plaintiffs to suffer physical and personal injuries therefrom as set forth in detail above, said Defendants committed unreasonable and excessive force against said Plaintiffs as same is an unlawful attack, assault, use of excessive force and/or battery against said Plaintiffs herein.

745. That by their conduct, actions, failures and/or omissions herein as set forth in detail above, said Defendants named above in paragraph of the Complaint "744" above, acting under the color of law, in the scope of their employment and authority and in concert with one another, deprived Plaintiffs ANDRE POUNALL,DURRELL WILLIAMS AND ANTHONY MATTHEWS of their Constitutional rights to be free from excessive and unreasonable force by intentionally, maliciously, negligently, grossly negligently, wantonly, recklessly and with deliberate indifference to human life, and/or to the lives, safety, health, well being and/or physical health of said Plaintiffs, hitting, striking, assaulting, battering, pepper-spraying, attacking, using excessive force and striking with their radios/walkie-talkies against said Plaintiffs causing thereby Plaintiffs to suffer and sustain serious physical, personal and psychological injuries including, but not limited to: cuts, lacerations, bruising, swelling, bleeding, injury to eyes, injury to face, injury to head, pain and suffering, anxiety, fear of imminent physical injury, and related injuries as set forth in detail above as well as their unlawful denial of medical care to treat said injuries that said Plaintiffs suffered as a result therefrom.

746.     That the foregoing was committed against the Plaintiffs ANDRE POUNALL, DURRELL WILLIAMS AND ANTHONY MATTHEWS without any justification, cause or good cause and without the provocation or fault of said Plaintiffs herein.

747.     That as a direct and proximate result of the foregoing, said Plaintiffs claim damages herein in the amount of THREE MILLION DOLLARS ($3,000,000.00).

### COUNT III

**42 U.S.C. Sections 1983—FOURTH, EIGHTH AND**
**FOURTEETH AMENDMENT VIOLATIONS ON BEHALF OF ALL PLAINTIFFS**

748.     Plaintiffs repeat, re-allege, reiterate and reassert each and every allegation and factual allegation contained in paragraphs of the Complaint numbered "1" to "747" as if more fully set forth at length herein.

749.     Defendants, under color of law, in the scope of their employment and authority and acting in concert with one another, deprived the Plaintiffs of their Fourth and Eighth Amendment rights to be free from unlawful seizure of their persons and to be free form cruel and unusual punishment and their Fourteenth Amendment Rights to due process and equal protection under the law.

750.     That the actions, conduct, failures and/or omissions of each and every Defendant herein, as set forth above in detail, on March 3, 2015 and continuing, was motivated by racial animus and by their desire to injure, oppress, threaten, frighten, harass and intimidate Plaintiffs because of their respective race, national origin, color, religion and/or ethnicity to wit: African American, black, Hispanic/Latino, Arab, Palestinian and/or Muslim, respectively.

751.     That the actions, conduct, failures and/or omissions of each and every Defendant herein, as set forth above in detail, on March 3, 2015 and continuing, was designed and/or

intended to unlawfully and unreasonably seize the persons of the Plaintiffs by denying them medical care and treatment and by denying to send them to an outside hospital/facility and to unlawfully and unreasonably subject the Plaintiffs to cruel and unusual punishment by feeding and serving them, and/or causing them to be fed and served, food containing rat poison which, in turn caused them to become seriously and medically ill for which they required timely, proper, and adequate medical treatment but which the Defendants then unlawfully refused/denied them.

752.    That each and every of the Defendants' racial animus was expressed by their conduct/actions/omissions/failures, individually and collectively, in intentionally, maliciously, wantonly, recklessly, negligently, grossly negligently and/or with deliberate indifference to the lives, safety, health, well being and/or physical health of the Plaintiffs, placing, cooking, preparing, plating, serving, handing out and/or distributing the foregoing lunch/food that was contaminated with rat poison, and/or causing same to be placed, cooked, prepared, plated, served, handed out and/or distributed to Plaintiffs for Plaintiffs to consume, which in fact they did, on March 3, 2015, causing thereby Plaintiffs to suffer and sustain serious physical, personal and psychological injuries including, but not limited to: consumption of rat poison, nosebleeds, vomiting, vomiting blood, diarrhea, diarrhea with blood, fainting, loss of consciousness, passing out, chest pains, stomach pains, dehydration, denial of medical care/treatment, anxiety, fear of death, mental anguish, emotional distress (intentional and negligent) and, related ailments/medical conditions as set forth in detail above and, then, thereafter, unlawfully denying and refusing Plaintiffs the timely, proper and/or adequate medical care that they needed and requested herein.

753.    As a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY-THREE MILLIN DOLLARS ($23,000,000.00).

## COUNT IV

## 41 U.S.C. Section 1983—CONSPIRACY- ON BEHALF OF ALL PLAINTIFFS

754. Plaintiffs repeat, re-allege, reiterate and reassert each and every allegation and factual allegation contained in paragraphs of the Complaint numbered "1" to "753" as if more fully set forth at length herein.

755. That the individual Defendants named herein, each acting under the color of law, in the scope of their employment and authority and in concert with one another, conspired with each other to undertake a course of conduct to injure, oppress, threaten, harass, intimidate, beat and assault the Plaintiffs, as set forth in detail above, to deny them their rights to the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to them by the Constitution, including the rights to be free from unlawful seizure of their persons, the right to be free from cruel and unusual punishment and to be free from unreasonable and excessive force.

756. That the individual Defendants named herein, each acting under the color of law, in the scope of their employment and authority and in concert with one another under color of law, conspired with each other to undertake a course of conduct to intentionally, maliciously, negligently, grossly negligently, wantonly, recklessly and with deliberate indifference to human life and/or to the lives, safety, health, well being and/or physical health of the Plaintiffs, place, cook, prepare, plate, serve, hand out and/or distribute the foregoing lunch/food that was contaminated with rat poison, and/or cause same to be placed, cooked, prepared, plated, served, handed out and/or distributed to Plaintiffs for Plaintiffs to consume, which in fact they did, on March 3, 2015, causing thereby Plaintiffs to suffer and sustain serious physical, personal and psychological injuries including, but not limited to: consumption of rat poison, nosebleeds, vomiting, vomiting blood, diarrhea, diarrhea with blood, fainting, loss of consciousness, passing

out, chest pains, stomach pains, dehydration, denial of medical care/treatment, anxiety, fear of death, mental anguish, emotional distress (intentional and negligent) and, related ailments/medical conditions as set forth in detail above; to thereafter unlawfully deny them medical care and treatment, to deny them access to an outside hospital/facility for medical care and treatment and to further assault, beat, hit, strike, batter Plaintiffs ANDRE POUNALL, DURRELL WILLIAMS AND ANTHONY MATTHEWS and subsequently deny them medical care for the injuries they sustained form the assault and battery inflicted upon them, as set forth above, when they requested medical care/treatment for their consumption of the foregoing lunch that contained the rat poison.

757. That the foregoing occurred without just cause, good cause, cause or justification and without any provocation on the part of the Plaintiffs herein.

758. That the foregoing is in violation of the of Plaintiffs' Constitutional rights including the right to due process, to be free from cruel and unusual punishment, to be free from excessive and unreasonable force and to be free from unlawful seizure of their persons.

759. That as a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00).

## COUNT V

### 42 U.S.C. Section 1983—SUPERVISORY LIABILITY – ON BEHALF OF ALL PLAINTIFFS

760. Plaintiffs repeat, re-allege, reiterate and reassert each and every allegation and factual allegation contained in paragraphs of the Complaint numbered "1" to "759" as if more fully set forth at length herein.

761. That on March 3, 2015 and continuing and at all relevant times herein mentined,

the Defendants had a duty to supervise, manage, control, oversee and/or police the conduct/actions/omissions of each and every other Defendant and had a responsibility to oversee the actions/conduct/omissions of each other including but not limited to Defendants Ponte, Dunbar and Feeney to supervise/oversee/control the actions/conduct/omissions of their corrections officers including the individually named Defendant correction officers and doctors herein including but not limited to: Francis, Wilson, Campbell, Jogie, Johnson, Bowen, Hanson, Henesen, Director Park and Doctor Park and "John Does" and "Jane Does" named herein, in their treatment of inmates under the exclusive care, custody and control of the New York City Department of Corrections including but not limited to the Plaintiffs herein.

762.    That on March 3, 2015 and continuing thereafter, and at all relevant times herein mentioned, the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, Ponte, Dunbar, Feeney, Director Park, AMKC Medical Clinic, West Medical Facility, were, at all relevant times herein, responsible for the hiring, training, retention, instructing, supervising, managing, controlling, overseeing and/or disciplining of each and every New York City Department of Corrections Officer and/or Doctor, nurse, medical staff, medical personnel that are employed by the Defendants and, in particular, Defendants Francis, Wilson, Campbell, Jogie, Johnson, Bowen, Hanson, Henesen, Director Park and Doctor Park and "John Does" and "Jane Does" herein named.

763.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Ponte, Dunbar and Feeney were, at all relevant times herein, responsible for the hiring,

training, retention, instructing, supervising, managing, controlling, overseeing and/or disciplining of Defendants Francis, Wilson, Campbell, Jogie, Johnson, Bowen, Hanson, Henesen, Director Park and Doctor Park and "John Does" and "Jane Does" herein named who intentionally, maliciously, negligently, grossly negligently, wantonly, recklessly and with deliberate indifference to human life and/or to the lives, safety, health, well being and/or physical health of the Plaintiffs, place, cook, prepare, plate, serve, hand out and/or distribute the foregoing lunch/food that was contaminated with rat poison, and/or cause same to be placed, cooked, prepared, plated, served, handed out and/or distributed to Plaintiffs for Plaintiffs to consume, which in fact they did, on March 3, 2015, causing thereby Plaintiffs to suffer and sustain serious physical, personal and psychological injuries including, but not limited to: consumption of rat poison, nosebleeds, vomiting, vomiting blood, diarrhea, diarrhea with blood, fainting, loss of consciousness, passing out, chest pains, stomach pains, dehydration, denial of medical care/treatment, anxiety, fear of death, mental anguish, emotional distress (intentional and negligent) and, related ailments/medical conditions as set forth in detail above; to thereafter unlawfully deny them medical care and treatment, to deny them access to an outside hospital/facility for medical care and treatment and to further assault, beat, hit, strike, batter Plaintiffs ANDRE POUNALL, DURRELL WILLIAMS AND ANTHONY MATTHEWS and subsequently deny them medical care for the injuries they sustained form the assault and battery inflicted upon them, as set forth above, when they requested medical care/treatment for their consumption of the foregoing lunch that contained the rat poison; thereby otherwise violating the Constitutional rights of the Plaintiffs including, but not limited to: the right to due process, to be free from cruel and unusual punishment, to be free from excessive and unreasonable force and to be free from unlawful seizure of their persons.

764.    That the Defendants knew, and/or in the exercise of due diligence, reasonable care and/or their duty, would have and/or should have known that the conduct/actions/omissions/failures of Defendants Francis, Wilson, Campbell, Jogie, Johnson, Bowen, Hanson, Henesen, Director Park and Doctor Park and "John Does" and "Jane Does" herein named would likely occur.

765.    That the Defendants failed to take preventive, corrective and/or remedial measures to guard against the unlawful, intentional, negligent, wanton, reckless, malicious and/or deliberately indifferent conduct, actions, omissions and/or failures of the foregoing individually named correction officers, doctors and nurses herein who, intentionally, maliciously, negligently, grossly negligently, wantonly, recklessly and with deliberate indifference to human life and/or to the lives, safety, health, well being and/or physical health of the Plaintiffs, place, cook, prepare, plate, serve, hand out and/or distribute the foregoing lunch/food that was contaminated with rat poison, and/or cause same to be placed, cooked, prepared, plated, served, handed out and/or distributed to Plaintiffs for Plaintiffs to consume, which in fact they did, on March 3, 2015, causing thereby Plaintiffs to suffer and sustain serious physical, personal and psychological injuries including, but not limited to: consumption of rat poison, nosebleeds, vomiting, vomiting blood, diarrhea, diarrhea with blood, fainting, loss of consciousness, passing out, chest pains, stomach pains, dehydration, denial of medical care/treatment, anxiety, fear of death, mental anguish, emotional distress (intentional and negligent) and, related ailments/medical conditions as set forth in detail above; to thereafter unlawfully deny them medical care and treatment, to deny them access to an outside hospital/facility for medical care and treatment and to further assault, beat, hit, strike, batter Plaintiffs ANDRE POUNALL, DURRELL WILLIAMS AND ANTHONY MATTHEWS and subsequently deny them medical care for the injuries they

sustained form the assault and battery inflicted upon them, as set forth above, when they requested medical care/treatment for their consumption of the foregoing lunch that contained the rat poison; thereby otherwise violating the Constitutional rights of the Plaintiffs including, but not limited to: the right to due process, to be free from cruel and unusual punishment, to be free from excessive and unreasonable force and to be free from unlawful seizure of their persons.

766. That the Defendants failed to take preventive, corrective and/or remedial measures to guard against the unlawful use of excessive force, assault, battery, unlawful seizure of their persons, unlawful cruel and unusual punishment committed against Plaintiffs herein and failed to guard against the unlawful refusal/denial to provide medical care to Plaintiffs and to prevent the violation of the Constitutional rights of the Plaintiffs herein. Had the Defendants taken appropriate action and/or exercised their duty in a reasonable and not in a negligent and/or intentionally reckless or malicious manner, the violation of Plaintiffs' constitutional rights would not have occurred.

767. That the failure of the Defendants in failing to, improperly and/or inadequately screening, supervising, hiring, retaining, training, managing, controlling, overseeing and/or disciplining Defendants Francis, Wilson, Campbell, Jogie, Johnson, Bowen, Hanson, Henesen, Director Park and Doctor Park and "John Does" and "Jane Does" herein named, directly and proximately caused injuries to the Plaintiffs.

768. That by their conduct/actions/failures/omissions committed by the Defendants under color of law and in their supervisory position, the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney, deprived Plaintiffs of their Constitutional rights including, but not limited

to, his right to be free from excessive and unreasonable force, the right to be free from cruel and unusual punishment, the right to be free from unlawful seizure of their persons, the right to medical care and their right to equal protection under the law and to due process.

769.    That as a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00).

## COUNT VI
## 42 U.S.C. Section 1983-MONEL CLAIM- ON BEHALF OF ALL PLAINTIFFS

770.    Plaintiffs repeat, re-allege, reiterate and reassert each and every allegation and factual allegation contained in paragraphs of the Complaint numbered "1" to "769" as if more fully set forth at length herein.

771.    That prior to March 3, 2015 to March 3, 2015 and continuing, Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney, through their official policy-makers, developed, created, facilitated, encouraged, enabled and/or maintained policies, practices and customs exhibiting deliberate indifference to and/or reckless disregard for the lives, safety, health, physical health, physical safety, well being, medical needs and/or Constitutional rights of the inmates, including Plaintiffs herein who, based upon their incarceration with/in the New York City Department of Corrections, are and/or were under the exclusive care, custody and control of the New York City Department of Corrections, its agents, servants, licensees, employees, correction officers, doctors, nurses, medical staff, medical personnel; the very policies, practices and customs which caused the violation of Plaintiffs' Constitutional rights which directly and proximately caused injury and damages to the Plaintiffs herein.

772     That prior to March 3, 2015 to March 3, 2015 and continuing, it was the policy, practice and/or custom of Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney to inadequately and/or improperly investigate the civilian complaints of corrections officers' misconduct, including allegations of excessive force, assault, battery and/or refusal to provide medical care including those such instances that lead to inmate injury and/or death. Instead, acts of racism, deliberate indifference, maliciousness, wantonness, recklessness, assault, battery and/or harassment were tolerated by the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney. That the foregoing Defendants have substantially failed to investigate and intentionally and with deliberate indifference, failed to discipline corrections officers that violated the Constitutional rights of the inmates that were/are, by virtue of their incarceration, in the exclusive care, custody and control of said Defendants.

773.     That prior to March 3, 2015 to March 3, 2015 and continuing, it was the policy, practice and/or custom of the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney to inadequately and/or improperly screen and hire corrections officers who are known, or with reasonable diligence should be known, to possess violent, abusive, reckless, negligent, malicious, harassing, wanton, egregious, unlawful and/or racist propensity and/or the propensity to assault, batter, use excessive force against and/or deny medical care to inmates like Plaintiffs herein.

That the foregoing Defendants have substantially failed to screen and reject such officers and, instead, hired, employed, retained, failed to supervise, failed to train, failed to monitor, failed to oversee, failed to control and/or failed to discipline their correction officers including the individually named Defendants herein.

774.    That prior to March 3, 2015 to March 3, 2015 and continuing, it was the policy, practice and/or customs of Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney to inadequately and/or improperly train and supervise corrections officers who are known, or with reasonable diligence should be known, to be actively engaged in misconduct, by, among other actions, failing to investigate and punish improper/unlawful conduct of corrections officers including, but not limited to: assault, battery, use of excessive force against and/or denial of medical care to inmates; thereby failing to discourage constitutional violations on the part of its officers, as those visited upon Plaintiffs by the Defendants as outlined herein.

775.    That prior to March 3, 2015 to March 3, 2015 and continuing, it was the policy, practice and/or custom of Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney to cook, prepare, serve, plate, distribute, hand out and/or feed, and/or cause to be cooked, prepared, served, plated, distributed, handed out and/or fed, to inmates, food and/or meals that were not fit for human consumption including but not limited to spoiled food and/or food containing bacteria, disease and/or poisoning and/or to fail to and/or to improperly and/or inadequately monitor, supervise, screen, hire,. train, instruct, retain, oversee, control and/or discipline their kitchen/

pantry/ kitchen pantry officers/workers and/or their cooks/food handlers/preparers including but not limited to Defendant Thomas herein; failed to comply with food and health regulations, inspections and/or codes and/or failed to, improperly and/or inadequately failed to investigate and/or take corrective/remedial/preventive measures in response to prior complaints about the spoiled and/or poisoned and/or food that was not fit for human consumption and/or complaints about the kitchen/pantry/kitchen pantry workers/cooks/prepares/food handlers including but not limited to prior complaints about Defendant Thomas herein.

776.     That prior to March 3, 2015 to March 3, 2015 and continuing, it was the policy, practice and/or custom of Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney to hire, retain and employ, and failed to and/or improperly and/or inadequately fire, instruct, train, supervise, monitor, oversee, control and/or discipline, the doctors, nurses, medical staff, medical employees and medical personnel, including Defendants Director Park and Doctor Park and those Defendants hire, employ and retain form Corizon Health incorporated and those on duty at AMKC Medical Clinic and/or West Medical Facility, and further fail to and/or improperly and/or inadequately investigate complaints and/or failed to take corrective/preventive/remedial measures about the medical services/treatment provided, or lack thereof, and/or of the denial of medical care/treatment including, but not limited to those complaints where an inmate has been injured or died therefrom.

777.     That prior to March 3, 2015 to March 3, 2015 and continuing, Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant

Director Park, Ponte, Dunbar and Feeney have been on notice for years that the foregoing conduct, actions, omissions, negligence, intentional acts, failures, recklessness and deliberate indifference to inmates in their exclusive care, custody and control and to the inmates' Constitutional rights to their lives, safety, health, physical health, and well being, as well as of the racism, abuse of authority, title, position and power, and harassment, were and continue to be widespread and that particular reforms need to be implemented.

778.    That prior to March 3, 2015 to March 3, 2015 and continuing, it was the policy, practice and/or custom of Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney to fail to, improperly and/or inadequately screen, hire, train, supervise, manage, control, oversee and discipline their officers, doctors, nurses, medical staff, medical personnel and/or employees, including those named herein as Defendants; thereby failing to discourage the Constitutional violations committed by them against inmates in their exclusive care, custody and control such as those violations committed against the Plaintiffs herein.

779.    That prior to March 3, 2015 to March 3, 2015 and continuing, the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, the New York City Department of Health, AMKC, AMKC Medical Clinic, West Medical Facility, Defendant Director Park, Ponte, Dunbar and Feeney, as a matter of policy, custom and practice, have, with deliberate indifference, failed to adequately screen for hiring and retention and failed to discipline, train, or otherwise supervise and control their officers, doctors, nurses, medical staff, medical personnel and/or employees, including those named herein as Defendants, and have fialed to take remedial/corrective/preventive measures to safeguard the rights, lives, safety,

health, physical health and well being of inmates that are in the exclusive care custody and control of the Defendants; thereby causing the Defendants herein to engage in the unlawful conduct against Plaintiffs as described in detail herein.

780.    That the foregoing acts, omissions, conduct, failures, recklessness, wantonness, negligence, malicious intentional acts, systemic deficiencies and/or deliberate indifference to the danger of harm to inmates like the Plaintiffs herein, and to the need for supplemental or different training, discipline, policies, practices and/or customs of the Defendants, their officers, doctors, nurses, medical staff, medical personnel and/or employees, including those named herein as Defendants, have caused them, including the individually named Defendants herein in the within matter to believe that they can violate the rights of inmates in their exclusive care, custody and control citizens with impunity; foreseeably allowing them to violate the Constitutional rights of inmates and to endanger their lives, safety, health, physical health and well being as these acts/conduct/omissions/failures    continued    to    occur    and    exist    and    to    be perpetuated/facilitated/maintained and enabled by the Defendants in violation of the State and Federal Constitution and were further tolerated, encouraged, facilitated, fostered, maintained, undisciplined, uncorrected and/or unpunished by Defendants the City of New York, the New York City Department of Corrections and/or the New York City Department of Health.

781.    That as a direct and proximate result of the Defendants' deliberate indifference and reckless disregard as detailed in the instant matter, Defendants violated Plaintiffs' aforementioned Constitutional rights and caused the Plaintiffs to suffer serious and substantial harm and injury therefrom.

782.    That as with the acts, conduct and omissions complained of herein, these Defendants' acts/conduct/omissions were performed and were enabled to be performed pursuant

to a custom and practice that, while not formally approved in writing by Defendants the City of New York, NYCDOC and NYCDOH, have nonetheless, been adopted and practiced as a practice and custom as same are so widespread so as to have the force of law and, as such, the Defendants the City of New York, NYCDOC and NYCDOH are liable herein for same.

783.    That Defendant the City of New York is liable herein as the facts pleaded herein set forth that as a municipality, the City of New York, despite being aware of the widespread problems complained of herein, nonetheless, the City of New York has demonstrated and/or or exercised "deliberate indifference" to these known unlawful actions/conduct/omissions/failures of its employees and agents that caused or led to the injury of a citizen such as Plaintiffs were caused to suffer herein.

784.    Here, the need to take some action to control the City of New York's, NYCDOH's and NYCDOC's agents/employees is so obvious and the inadequacy of the City's existing practice is so likely to result in violation of one's constitutional rights as occurred to Plaintiffs herein and, as such, the City of New York is liable for being deliberately indifferent to the need pursuant to §1983.

785.    That the toleration of an employee's or subordinate's behavior/conduct, as occurred herein with Defendants' unlawful conduct and the other Defendants' acceptance, fostering, perpetuating, facilitating and enabling of same, herein establishes a "policy-in practice" for which the City of New York, NYCDOH and NYCDOC are liable and are further liable for failing to train their employees herein, including the individually named Defendants herein, and by failing to do so despite the known need for same, evidencing deliberate indifference to rights of citizens including Plaintiffs herein.

786.    That despite knowing of the foregoing need, Defendants took no action, remedial, corrective, investigative, disciplinary or otherwise, in response thereto thereby allowing

Defendants to intentionally injure Plaintiffs herein.

787.    That the acts complained of herein, including, but not limited to the acts of the individually named Defendants herein, were committed by the individually named Defendants herein while on duty, while within the scope of their employment, while acting under color of law and while acting in concert with one another and, as such, the City need not have foreseen the exact act or manner of the Plaintiff's injuries as, where general foreseeability exists, as it so exists herein, then even the intentional torts of the individually named Defendants fall within the scope of their respective employment for which Defendants the City of New York, NYCDOH and NYCDOC are liable herein.

788.    As a direct and proximate result of the Defendants' deliberate indifference, Defendants violated Plaintiffs' aforementioned State and Federal Constitutional Rights and caused the Plaintiffs to suffer substantial harm and injury including, but not limited to: assault, battery, cruel and unusual punishment, unlawful excessive force, unlawful seizure of their persons, denial of medical care, vomiting, vomiting blood, nosebleeds, diarrhea, diarrhea with blood, stomach pains, chest pains, difficulty breathing, fainting, passing out and ;losing consciousness as well as anxiety, mental anguish, emotional distress (intentional and negligent), shock, fear, fear of death, fear of imminent bodily injury, trauma, violation of due process rights and equal protection under the law in violation of Plaintiffs' Federal rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution as well as their State Constitution rights, as well as, severe pain and suffering and physical and psychological injury as detailed herein.

789.    That as a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00)

## COUNT VII

### 42 U.S.C. Section 1983/1986 ACTION FOR NEGLECT/FAILURE TO PREVENT

790.    Plaintiffs repeat, re-allege, reiterate and reassert each and every allegation and factual allegation contained in paragraphs of the Complaint numbered "1" to "789" as if more fully set forth at length herein.

791.    That, upon information and belief, the individually named Defendants had knowledge and/or information that they did not have justification, authority or permission to violate Plaintiffs' Constitutional rights, to subject them to cruel and unusual punishment, to subject them to excessive use of force, to subject them to denial of medical care, to subject them to unlawful seizure of their persons, to deny them medical care and/or to assault and batter them thereby directly and proximately causing Plaintiffs to be injured and damaged herein as set forth in detail above.

792.    That upon information and belief, the individual Defendants named herein, each individually and collectively, had the power and authority to prevent the others individually and/or collectively from engaging in the aforementioned conduct against the Plaintiffs and each Defendant, individually and acting in concert with the other, willfully and/or negligently neglected and refused to prevent the other from engaging in the aforementioned acts/conduct.

793.    That the Defendants' willful and deliberate failure to act when they each had a duty to do so was the actual and proximate cause of the injuries Plaintiffs suffered and continue to suffer as a direct and proximate result therefrom.

794.    That as a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00) .

## COUNT VIII

### 42 U.S.C. Section 1983 -- CAUSED TO BE SUBJECTED

795.    Plaintiffs repeat, reiterate, reassert and re-allege each and every allegation and fact set forth above in paragraphs of the Complaint numbered "1" to "794" with the same force and effect as if more fully set forth at length herein.

796.    That by the Defendants' actions, conduct, negligence and/or omissions, same Defendants caused the Plaintiffs to be subjected to including, but not limited to: consumption of rat poison, assault, battery, cruel and unusual punishment, excessive use of force, denial of medical care, unlawful seizure of their persons, physical injuries, emotional injuries and psychological injuries as set forth in detail above.

797.    That as a direct and proximate result of the Defendants' actions, conduct, negligence and/or omissions, Plaintiffs were injured/damaged herein as set forth in detail above.

798.    That the Defendants and/or their agents, servants, officers, correction officers, doctors, nurses, medical staff, medical personnel, and/or employees, acting under the color of law, were under a duty to ensure that Plaintiffs' rights were not violated and that their employees including the individual Defendants herein, did not abuse their power, position, trust and authority to injure and damage the Plaintiffs herein as set forth in detail above.

799.    That at all times herein mentioned, the Defendants acted and/or failed to act in concert with one another, within the scope of their employment and under color of law and in their position, title, rank, power, trust and authority as NYDOC agents and employees and, as such, Defendants the City of New York, NYCDOH and NYCDOC are liable herein.

800.    That as a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00).

## COUNT IX
### 42 USC §1983 - FAILURE TO INTERCEDE

801.    Plaintiffs repeat, reassert, reiterate and re-allege each and every allegation and fact set forth above in paragraphs of the Complaint numbered "1" to "800" with the same force and effect as if more fully set forth at length herein.

802.    By their continuing conduct/omissions/failures as detailed above, under color of state law, Defendants each individually and collectively, had opportunities to intercede on behalf of Plaintiffs to prevent the unlawful conduct committed against them as set forth in detail above and to prevent the other violations of the State and Federal Constitutional Rights of the Plaintiff sbut, due to Defendants' intentional conduct, negligence, breach of duty and/or deliberate indifference, Defendants declined, failed or refused to do so.

803.    That as a direct and proximate result of Defendants' conduct, acts and/or omissions, as set forth above, Plaintiffs were injured and damaged as set forth in detail above and claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00).

## PENDENT STATE CLAIMS
### COUNT X

804.    Plaintiffs repeat, reiterate, reassert and re-allege each and every allegation and fact set forth above in paragraphs of the Complaint numbered "1" to "803" with the same force and effect as if more fully set forth at length herein.

805.    That individual Defendants, under color of law, conspired with each other to undertake a course of conduct to assault and batter Plaintiffs, with the intent of denying Plaintiffs the equal protection of the laws of the State of New York and the United States of America.

806.    That by their actions, as set forth above, Defendants committed unlawful use of

excessive and unreasonable force, cruel and unusual punishment, assault, battery, unlawful refusal to provide medical care, unlawful seizure of their persons, intentional infliction of emotional distress, negligent infliction of emotional distress, outrageous conduct, negligence, gross negligence, negligent hiring, retention, training and supervision under the laws of the State of New York.

807.    That at all times herein mentioned, the foregoing unlawful conduct/omissions by Defendants against Plaintiffs was without justification or cause, without permission and/or authority and was committed forcibly, unlawfully and against Plaintiffs' will.

808.    That all of the foregoing occurred without fault and/or provocation on the part of the Plaintiffs.

809.    That at all relevant times herein, the individual Defendants named herein were employees of the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, AMKC, AMKC Clinic, West Medical Facility, Corizon Health Incorporated and/or the New York City Department of Health and, as such, the City of New York is liable under the doctrine of *respondeat superior* for their tortuous actions.

810.    That pursuant to 28 U.S.C. Section 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

811.    That as a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00).

## COUNT XI- ASSAULT & BATTERY

812.    Plaintiffs repeat, reiterate, reassert and re-allege each and every allegation and fact set forth above in paragraphs of the Complaint numbered "1" to "811" with the same force

and effect as if more fully set forth at length herein.

813.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Defendants, by their actions, conduct, omissions, failures and/or intentional conduct, in feeding and/or causing to be fed to Plaintiffs food that was contaminated with rat poison and caused Plaintiffs to become seriously ill therefrom, and hitting and striking Plaintiffs ANDRE POUNALL, DURRELL WILLIAMS AND ANTHONY MATTHEWS when they requested medical care, unlawfully assaulted, battered, attacked, used excessive force against, hit, struck and assailed Plaintiffs without just cause, justification or provocation on the part of Plaintiffs herein causing Plaintiffs to suffer and sustain serious physical and psychological injuries as set forth in detail above including, but not limited to: vomiting, vomiting blood, diarrhea, diarrhea with blood, fainting, chest pains, loss of consciousness, passing out, stomach pains, mental anguish, emotional distress (intentional and negligent) anxiety, fear of death, fear of imminent bodily injury and other related injuries herein and was otherwise damaged/injured requiring medical care/treatment herein which the Defendants unlawfully denied/refused to provide.

814.    That as a result of the foregoing, Defendants placed Plaintiffs in apprehension and fear of death, of imminent harmful and/or offensive contact and/or physical injury as set forth in detail above.

815.    That as a direct and proximate result of the foregoing, Defendants committed unlawful assault and battery against Plaintiffs herein.

816.    That as a direct and proximate result of the unlawful assault and battery committed by Defendants against Plaintiff herein on March 3, 2015 and continuing, Defendants wrongfully used physical force, assault and battery against Plaintiffs without permission, consent, authority, invitation, justification, just cause or provocation on the part of Plaintiffs to assault and batter them at anytime.

817.    That the actions in attacking, hitting, assaulting and battering Plaintiffs herein as set forth in detail above by Defendants, were intentional, malicious, brutal, extreme, outrageous, wanton and reckless and with reckless disregard for and deliberate indifference to the life, safety, physical safety, health, physical health and well being of Plaintiffs herein.

818.    That as a direct and proximate result of the foregoing, Plaintiffs claim damages in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00) plus punitive damages herein.

819.    That pursuant to 28 U.S.C. Section 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

## COUNT XII- INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

820.    Plaintiffs repeat, reiterate, reassert and re-allege each and every allegation and fact set forth above in paragraphs of the Complaint numbered "1" to "819" with the same force and effect as if more fully set forth at length herein.

821.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Defendants engaged in extreme and outrageous conduct, intentionally, recklessly, wantonly, maliciously and/or negligently causing Plaintiffs to suffer severe emotional distress, anxiety, mental anguish, psychological trauma, fear of death, fear of imminent bodily harm and was otherwise emotionally injured as a direct and proximate result therefrom.

822.    That as a direct and proximate result of Defendants' extreme and outrageous, wanton and reckless conduct, Plaintiffs claim damages for the injuries set forth above.

823.    That on March 3, 2015 and continuing, and at all relevant times herein mentioned, the Defendants further placed Plaintiffs in fear of death, in fear of their physical safety, health, life, and well being and as such, Defendants negligently and recklessly caused Plaintiffs to suffer

emotional distress, mental anguish, shock, anxiety, psychological trauma and related emotional and psychological injuries as a direct and proximate result therefrom.

824.   That as a direct and proximate result of Defendants' negligent and reckless conduct, Plaintiffs claim damages for the injuries set forth above.

825.   That as a direct and proximate result of the Defendants' foregoing negligence, actions, conduct, inactions, omissions, failures, recklessness, malicious conduct, intentional conduct, wantonness, deliberate indifference and reckless disregard, Plaintiffs suffered emotional distress (both intentional and negligent) and, as such, claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS.

826.   That pursuant to 28 U.S.C. Section 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

## COUNT XIII – NEGLIGENCE

827.   Plaintiffs repeat, reiterate, reassert and re-allege each and every allegation and fact set forth above in paragraphs of the Complaint numbered "1" to "826" with the same force and effect as if more fully set forth at length herein.

828.   That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Defendants owed Plaintiffs a duty to keep and maintain Plaintiffs in a safe environment, free from excessive force, assault, battery, physical injury, cruel and unusual punishment, unlawful seizure of their persons, poisoning, and to provide/render medical care/treatment.

829.   That on March 3, 2015 and continuing, and at all relevant times herein mentioned, Defendants had a duty to supervise, manage, control, oversee and/or police the conduct/actions of each and every other Defendant and had a responsibility to oversee the actions/conduct of

each other.

830.    That on March 3, 2015 and continuing and at all relevant times herein mentioned, the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, AMKC, AMKC Medical Clinic, West Medical Facility, Corizon Health Incorporated, New York City Department of Health, Ponte, Dunbar, Feeney and/or Director Park were, at all relevant times herein, responsible for the hiring, training, retention, instructing, supervising, managing, controlling, overseeing and/or disciplining of each and every New York City Department of Corrections Officers, doctors, nurses, medical staff and employees including the individually named Defendants and the "John Does" and "Jane Does" herein named.

831.    That on March 3, 2015 and continuing and at all relevant times herein mentioned, the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, AMKC, AMKC Medical Clinic, West Medical Facility, Corizon Health Incorporated, New York City Department of Health, Ponte, Dunbar, Feeney and/or Director Park were, at all relevant times herein, responsible for the hiring, training, retention, instructing, supervising, managing, controlling, overseeing and/or disciplining of each and every New York City Department of Corrections Officers, doctors, nurses, medical staff and employees including the individually named Defendants and the "John Does" and "Jane Does" herein named, who, intentionally, negligently, recklessly, wantonly, grossly negligently and/or maliciously fed and/or caused to be fed to Plaintiffs, food/lunch that was poisoned with rat poison, denied them medical care to treat them once they became seriously ill, and beat and assaulted Plaintiffs and otherwise used unlawful excessive force, subjected them to cruel and unusual punishment, subjected them to unlawful seizure of their persons, violated their Federal and State Constitutional rights, and otherwise injured and damaged Plaintiffs herein as set forth in detail above.

832. That at all relevant times herein mentioned, Defendants knew, and/or in the exercise of due diligence and/or their duty, would have/should have known that the conduct/actions/omissions/failures of the individually named Defendants and the "John Does" and "Jane Does" would likely occur.

833. That at all relevant times herein mentioned, the Defendants failed to take preventive, corrective and/or remedial measures to guard against the unlawful, intentional and malicious conduct, actions, omissions and failures as set forth above that Defendants committed against Plaintiffs and to prevent the violation of the Constitutional rights of the Plaintiffs. Had the Defendants taken appropriate action and/or exercised their duty in a reasonable and not in a negligent manner, the violation of Plaintiffs' Constitutional rights would not have occurred.

834. The failure of the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, AMKC, AMKC Medical Clinic, West Medical Facility, Corizon Health Incorporated, New York City Department of Health, Ponte, Dunbar, Feeney and/or Director Park, in failing to screen, supervise, train, manage, control, oversee and discipline the individually named and "John Does" and "Jane Does" Defendants directly and proximately caused physical and psychological/emotional injury and damage to the Plaintiffs herein.

835. By their conduct/actions/omissions/failures as set forth in detail above, under color of law and in their supervisory position, the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, AMKC, AMKC Medical Clinic, West Medical Facility, Corizon Health Incorporated, New York City Department of Health, Ponte, Dunbar, Feeney and/or Director Park deprived Plaintiffs of their Constitutional rights, including the right to be free from excessive and unreasonable force, the right to be free from cruel and

unusual punishment, the right to be free from unlawful seizure of their persons, the right to be free from assault and battery, the right to medical care and the right to equal protection under the law and to due process.

836. That at all relevant times herein mentioned, the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, AMKC, AMKC Medical Clinic, West Medical Facility, Corizon Health Incorporated, New York City Department of Health, Ponte, Dunbar, Feeney and/or Director Park were at all relevant times herein, negligent in the hiring, retention, training and supervision and control of the individual Defendants named herein.

837. That at all relevant times herein mentioned, the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, AMKC, AMKC Medical Clinic, West Medical Facility, Corizon Health Incorporated, New York City Department of Health, Ponte, Dunbar, Feeney and/or Director Park were at all relevant times herein, negligent in failing to intervene and/or prevent the aforementioned unlawful conduct/omissions/actions/failures/injuries/damages that were inflicted against Plaintiffs.

838. That the Defendants the City of New York, the New York City Department of Corrections, Rikers Island, AMKC, AMKC Medical Clinic, West Medical Facility, Corizon Health Incorporated, New York City Department of Health, Ponte, Dunbar, Feeney and/or Director Park were, at all relevant times herein mentioned, negligent by failing to and/or inadequately hiring, retaining, supervising, controlling, disciplining and/or training their employees/agents, specifically the individually named Defendants and "John does" and "Jane Does" named herein and by further failing to prevent, intercede and/or stop the aforementioned individually named defendants from committing the unlawful acts, conduct, omissions and

failures against the Plaintiffs herein as set forth in detail above which directly and proximately caused injury and damage to Plaintiffs therefrom.

839.    That    as    a    result    of    the    foregoing    unlawful acts/conduct/omissions/failures/negligence of the Defendants herein, Defendants breached the duty they owed to Plaintiffs and were in violation of Plaintiffs' rights pursuant to Article One, Section Twelve of the New York State Constitution.

840.    That Defendants' breach was a direct and proximate cause of Plaintiffs' injuries herein.

841.    Pursuant to 28 U.S.C. Section 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

842.    That as a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00)

## COUNT XIV – PUNITIVE DAMAGES

843.    Plaintiffs repeat, reiterate, reassert and re-allege each and every allegation and fact set forth above in paragraphs of the Complaint numbered "1" to "842" with the same force and effect as if more fully set forth at length herein.

844.    That the Defendants' negligent, grossly negligent, intentional, malicious, reckless, wanton, extreme, outrageous, reckless disregard and deliberate indifference, inactions, omissions, conduct and/or failures as set forth herein, were committed with deliberate and/or reckless indifference/disregard to/for human life and to Plaintiffs' lives, safety, health, physical safety, physical health, well being and rights.

845.    That as a direct and proximate result of the foregoing, Plaintiffs suffered

injuries/damages herein including, but not limited to: vomiting, vomiting blood, diarrhea, diarrhea with blood, fainting, chest pains, loss of consciousness, passing out, stomach pains, mental anguish, emotional distress (intentional and negligent) anxiety, fear of death, fear of imminent bodily injury and other related injuries herein and was otherwise damaged/injured requiring medical care/treatment herein which the Defendants further unlawfully denied/refused to provide.

846.   That as a direct and proximate result of the foregoing, Plaintiffs claim damages herein in the amount of TWENTY-THREE MILLION DOLLARS ($23,000,000.00).

847.   Pursuant to 28 U.S.C. Section 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

## DAMAGES AND PRAYER FOR RELIEF

848.   **WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

a.   On the First Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

b.   On the Second Count in the sum of THREE MILLION DOLLARS ($3,000,000.00);

c.   On the Third Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

d.   On the Fourth Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

e.   On the Fifth Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

f.   On the Sixth Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

g.       On the Seventh Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

h.       On the Eighth Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

i.       On the Ninth Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00).

j.       On the Tenth Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

k.       On the Eleventh Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

l.       On the Twelfth Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

m.       On the Thirteenth Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

n.   On the Eighth Count in the sum of TWENTY-THREE MILLION DOLLARS ($23,000,000.00);

o.   Attorneys' fees, costs and disbursements; and

p.   Any other such award or further relief as this Court may deem just and proper.

## A JURY TRIAL IS HEREBY DEMANDED

Dated:   Jamaica, New York
         June 1, 2015

Yours, etc.,

JOANN SQUILLACE, ESQ.
Drummond & Squillace, PLLC
Attorneys for Plaintiffs
175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
(718)- 298-5050

## ATTORNEY'S VERIFICATION

JOANN SQUILLACE, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am an attorney at DRUMMOND & SQUILLACE, PC, attorneys of record for Plaintiffs herein. I have read the annexed **AMENDED COMPLAINT AND JURY DEMAND** and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

This verification is made by me because Plaintiffs are not presently in the County wherein I maintain my offices.

DATED:      Jamaica, New York
              June 1, 2015

JOANN SQUILLACE, ESQ.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------------------------------------------------------------------------X
TROY SIDDONS, TERRENCE PAYNE, PETER SPRAUVE, QUINCY PALMER, JOSEPH JOHNSON, CLARENCE WOODWARD, JR.
RAMEL ROBINSON, ELLIS WILSON, BERNABE LOPEZ, RASHAUN ROWE, JAMEL EDMONDS, ROBERT WOOTEN, TYSEAN
SAIGO, ANTHONY MATTHEWS, REGINALD DUPREE, MICHAEL WILLIAMS, ADHM HAMMOURI, DESHAUN GREGORY, ANDRE
POUNALL, DUWAIN BOYCE, DURRELL WILLIAMS, JOHN AMUSO AND MERSIM KLOBUCISTA,

                                    Plaintiffs,

       -against-

THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS, THE NEW YORK CITY DEPARTMENT OF
HEALTH, RIKERS ISLAND CORRECTIONAL FACILITY, ANNA M. KROSS CENTER (AMKC), NEW YORK CITY DEPARTMENT OF
CORRECTIONS COMMISSIONER JOSEPH PONTE, NEW YORK CITY DEPARTMENT OF CORRECTIONS ASSISTANT
COMMISSIONER PATRICIA FEENEY, AMKC MEDICAL CLINIC/FACILITY, WEST MEDICAL CLINIC/FACILITY, CORIZON
HEALTH       INCORPORATED,      DOCTOR      YUNGDO      PARK,      Individually      and      in      his      official
capacityasemployee/agent/servant/doctor/physician/licensee/contractor/Medical Director of Corizon Health Incorporated, of the New York City
Department of Health of the New York City Department of Corrections, of Rikers Island Correctional Facility, of AMKC and/or of AMKC
Medical     Clinic/Facility,    DOCTOR      JOON      B.     PARK,     Individually     and     in     his     official     capacity     as
employee/agent/servant/doctor/physician/licensee/
contractor of Corizon Health Incorporated, of the New York City Department of Health, of the New York City Department of Corrections, of
Rikers Island Correctional Facility, of AMKC and/or of AMKC Medical Clinic/Facility, NEW YORK CITY DEPARTMENT OF
CORRECTIONS OFFICER FRANCIS THOMAS, SHIELD/TAX ID# 15943, Individually and in her official capacity as an employee, agent,
servant, licensee, contractor, kitchen pantry officer, correction officer, kitchen pantry correction officer of the City of New York, the New York
City Department of Corrections, of Rikers Island Correctional Facility and of AMKC facility, NEW YORK CITY DEPARTMENT OF
CORRECTIONS OFFICER CAPTAIN RICKY JOGIE, SHIELD/TAX ID# 817, Individually and in his official capacity as an employee, agent,
servant, licensee, contractor, officer, correction officer, Captain of the City of New York, the New York City Department of Corrections, of
Rikers Island Correctional Facility and of AMKC facility, NEW YORK CITY DEPARTMENT OF CORRECTIONS OFFICER ASSISTANT
DEPUTY WARDEN SHERMA DUNBAR, SHIELD/TAX ID#1041, Individually and in his/her official capacity as employee, agent, servant,
licensee, contractor, correction officer, Assistant Deputy Warden of the New York City Department of Corrections, of Rikers Island Correctional
Facility and/or of AMKC facility, NEW YORK CITY DEPARTMENT OF CORRECTIONS OFFICER "JOHN" CAMPBELL, first name being
fictitious and known to the New York City Department of Corrections/Rikers Island/AMKC, intended to be the New York City Department of
Corrections Officer for the Plaintiffs' housing area in/at AMKC on duty/post in/at AMKC who assisted in serving and/or served
the food in question to Plaintiffs on March 3, 2015, Individually and in his official capacity as an employee, agent, servant, licensee, contractor,
correction officer, officer of the New York City Department of Corrections, of Rikers Island Correctional Facility and/or of AMKC facility,
NEW YORK CITY DEPARTMENT OF CORRECTIONS OFFICER CAPTAIN "JANE" BOWEN, first name being fictitious and known to the
New York City Department of Corrections/Rikers Island/AMKC intended to be the New York City Department of Corrections
Captain/Correction Officer for Plaintiffs' housing area/AMKC/AMKC Medical Clinic/Facility who denied, delayed, prevented, obstructed and/or
failed to provide proper/adequate/timely medical aid/assistance/treatment/care to Plaintiffs, Individually and in her official capacity as an
employee, agent, servant, licensee, contractor, correction officer, officer, Captain of the New York City Department of Corrections, of Rikers
Island Correctional Facility and/or of AMKC facility, NEW YORK CITY DEPARTMENT OF CORRECTIONS OFFICER CAPTAIN
TIMOTHY JOHNSON, SHIELD/TAX ID#1065, Individually and in his official capacity as an employee, agent, servant, licensee, contractor,
correction officer, officer, Captain of the New York City Department of Corrections, of Rikers Island Correctional Facility and/or of AMKC
facility, NEW YORK CITY DEPARTMENT OF CORRECTIONS OFFICER "JANE" WILSON, first name being fictitious and known to the
New York City Department of Corrections/Rikers Island/AMKC intended to be the New York City Department of Corrections Correction Officer
for Plaintiffs' housing area/AMKC/AMKC Medical Clinic/Facility who denied, delayed, prevented, obstructed and/or failed to provide
proper/adequate/timely medical aid/assistance/treatment/care to Plaintiffs, Individually and in her official capacity as an employee, agent, servant,
licensee, contractor, correction officer, officer of the New York City Department of Corrections, of Rikers Island Correctional Facility and/or of
AMKC facility, NEW YORK CITY DEPARTMENT OF CORRECTIONS OFFICER LINCOLN HANSON, SHIELD/TAX ID#13102,
Individually and in his official capacity as an employee, agent, servant, licensee, contractor, correction officer, officer of the New York City
Department of Corrections, of Rikers Island Correctional Facility and/or of AMKC facility, NEW YORK CITY DEPARTMENT OF
CORRECTIONS OFFICER "JOHN" HENESEN A/K/A "HENSEN", first name being fictitious and known to the New York City Department of
Corrections/Rikers Island/AMKC intended to be the New York City Department of Corrections Correction Officer for Plaintiffs' housing
area/AMKC/AMKC Medical Clinic/Facility who denied, delayed, prevented, obstructed and/or failed to provide proper/adequate/timely medical
aid/assistance/treatment/care to Plaintiffs in furtherance of which he pepper sprayed Plaintiff Andre Pounall, Individually and in his official
capacity as an employee, agent, servant, licensee, contractor, correction officer, officer of the New York City Department of Corrections, of
Rikers Island Correctional Facility and/or of AMKC facility, and "JOHN " AND "JANE DOES", names being fictitious intended to be
employees, agents, servants, licensees, contractors, doctors, nurses, physicians, medical staff, medical personnel, medical assistants, officers,
correction officers of the City of New York, of the New York City Department of Corrections, of Rikers Island Correctional Facility, of AMKC,
of AMKC Medical Clinic/Facility, of the New York City Department of Health and/or of Corizon Health Incorporated,

                             Defendants.
--------------------------------------------------------------------------------------------------------------------------------------------------X

## AMENDED VERIFIED COMPLAINT AND JURY DEMAND

**DRUMMOND & SQUILLACE, PLLC**
**Attorneys for Plaintiffs**
**175-61 Hillside Avenue, Suite 205**
**Jamaica, New York 11432**